ELY, SALYARDS & CO., RESPONDENT, *v.* FARMERS' ELE-
VATOR CO. ET AL., APPELLANTS.

(No. 5,334.)

(Submitted November 19, 1923.  Decided December 17, 1923.)

[221 Pac. 522.]

*Promissory   Notes — Delivery — Presumptions — Corporations
—Directors—Repudiation of Acts of Manager Within Scope
of Authority—Estoppel.*

Promissory Notes—Delivery—Presumptions—Evidence.
    1.  Under section 8423, Revised Codes of 1921, providing that where a negotiable instrument is no longer in the possession of a party whose signature appears thereon a valid and intentional delivery by him is presumed, *held*, in an action on a promissory note, that its

production by plaintiff raised a presumption of a valid and intentional delivery of it to the payee by the maker, and that it was properly admitted as against the objection that plaintiff was not the owner or holder thereof.

Corporations—Repudiation of Acts of Manager Within Scope of Authority —Directors—Estoppel.

2.   Where the manager of an elevator company, when he bought and shipped grain and attached drafts to the bills of lading, was acting within the scope of his authority, the directors, who with full knowledge of all the facts acquiesced therein and accepted the benefits derived therefrom, were estopped to deny his authority or claim that he acted against their will.

*Appeal from District Court, Richland County; Frank P. Leiper, Judge.*

ACTION by Ely, Salyards & Co. against the Farmers' Elevator Company of Nohle and others. Judgment for plaintiff and defendants appeal. Affirmed.

*Messrs. Hurley & O'Neill,* for Appellants, submitted a brief; *Mr. C. C. Hurley* argued the cause orally.

It clearly appears from the evidence offered herein that there was no actual delivery of the note in question; that the same was only placed in the hands of the plaintiff conditionally, and on condition that the same could become effective only when drafts were drawn on the plaintiff by the president of the defendant elevator company. The plaintiff ignored these arrangements and honored drafts drawn by another. (*Union Inv. Co.* v. *Epley,* 164 Wis. 438, 160 N. W. 175; *First State Bank of Eckman* v. *Kelly,* 30 N. D. 84, Ann. Cas. 1917D, 1044, 152 N. W. 125; *Paulson* v. *Boyd,* 137 Wis. 241, 118 N. W. 841; *Seattle Nat. Bank* v. *Becker,* 74 Wash. 431, 133 Pac. 613; *Sayre* v. *Leonard,* 57 Colo. 116, 140 Pac. 196; *Gamble* v. *Riley,* 39 Okl. 363, 135 Pac. 390; *Fidelity Title Guaranty Co.* v. *Ruby,* 16 Ariz. 75, 141 Pac. 117.)

*Messrs. Brattin & Ketter* and *Messrs. Middaugh, Cuthbert & Smythe,* the latter of the Bar of Duluth, Minnesota, submitted a brief; *Mr. Arthur R. Smythe* argued the cause orally.

MR. JUSTICE COOPER delivered the opinion of the court.

The plaintiff brought this action to recover the sum of $2,017.62, a balance due upon a note in the sum of $5,000 dated October 1, 1920, due ninety days after date, executed by the defendant corporation, indorsed by Simon Gilbertson, Anton Storvick, Almer C. Mildahl, A. F. Nohle, Anton Dahl and Emil Olson, directors and stockholders of the defendant company, and delivered to plaintiff. The defendant company filed a separate answer admitting the execution of the note, denying that it received any consideration therefor and that any balance was due, and alleging affirmatively that the note was delivered as collateral security for credit to be extended in its business of buying and selling grain; that the plaintiff was to receive the note and hold it until the defendant corporation would draw drafts on the plaintiff either at Duluth or Minneapolis, Minnesota, for grain shipped to it; that the plaintiff was to honor the drafts and give the defendant company credit on the note for such drafts as might be drawn by the president of the corporation in its behalf, and by no other person, that at no time since its execution has the defendant through its officers drawn any draft or received any consideration from plaintiff for the note. The individual defendants filed a like answer.

Plaintiff, in its reply, denied all the affirmative allegations in both answers and alleged that the consideration for the note was the advancement of $5,000 to be used in buying and shipping grain, and that there still remained unpaid the sum prayed for in the complaint.

The evidence was that the elevator company was engaged in buying and selling grain and shipping it to the Duluth and Minneapolis grain markets; that the individual defendants were directors and stockholders of the defendant company; that during the marketing season of 1920, and until the spring of 1921, A. F. Eckenbeck was manager and buyer for the elevator company; that in correspondence passing between the

plaintiff and Mr. Olson, president of defendant company, it was agreed that a sum approximating $10,000 was to be advanced by plaintiff to defendant with which to buy and ship grain to market; that two notes of $5,000 each were executed by the elevator company and forwarded to plaintiff about August 24, 1920, by Mr. Olson, one of which was afterwards returned. Mr. Olson testified that he did not give "any particular instruction" as to whether the plaintiff should honor drafts signed by anyone but himself or the secretary; that he first knew plaintiff had advanced money to his company when he assisted in checking up the books in January, 1921. On cross-examination he testified that upon investigation it was found that the cash-book of the defendant disclosed that the elevator company had received $5,000 through drafts drawn by the manager on the plaintiff. Questioned by the court, he testified: "Q. That is, when he [Eckenbeck] would ship a carload of grain, he would draw a draft on Ely, Salyards & Co. and attach a draft to the bill of lading? A. Yes." He testified further that Eckenbeck, as manager, signed all the checks for grain purchased by the elevator company, and drew a draft on plaintiff against every car of grain shipped to it; that Eckenbeck was in the employ of the elevator company as manager from August 15, 1920; that he was taken ill January 23, 1921, and left for St. Paul. He was asked this question by counsel for plaintiff: "Q. Did you not write to the plaintiff in this action and state that Mr. Eckenbeck would continue to take care of your business while he was in St. Paul? A. I did." He was also asked these questions: "Q. He also signed all the grain checks which he paid out for grain received, did he not? A. Yes. Q. He also signed numerous drafts drawn on this plaintiff prior to these drafts which were drawn in pursuance to the note in question? A. Every car he shipped he drawed a draft against it."

In a letter introduced by defendants dated October 13, 1920, the plaintiff wrote Mr. Olson stating this: "We have already corresponded with your manager, who has advised us that

they would get along with $5,000 for grain money, and asked us to return one of the $5,000 notes which we did.   We think matters will go along all right now, as when Mr. Branca was there, you and the manager seem to understand our position better.   We hope we may be favored with some shipments.''

In a letter dated September 27, 1920, written by Mr. Olson to the plaintiff, introduced by defendants, is the following: ''I have your letter of Sept. 21, and note that no draft has been drawn on you yet.   I suppose it is because our manager has not needed the money.''   Explaining what was meant by this statement, Mr. Olson testified: ''Well, he was to draw money, or drafts on them with bill of lading attached, and my opinion being that he hadn't drawn any drafts, that he hadn't shipped any grain to them.''   He also stated that the books of the elevator company were inspected and the affairs checked up twice a year; that Mr. Eckenbeck usually drew the drafts and checks for the elevator company.   Mr. Austin, the accounting officer of the plaintiff, testified that none of the drafts drawn on the plaintiff were drawn by the president, secretary, or any officer other than the manager, and that the sum of $3,068.38 had been paid and $2,017.62 had not been paid on the note; that the last payment prior to the bringing of this action was made July 16, 1921.   In a meeting of the directors of the elevator company held October 9, 1920, as appears by the minutes, the following resolution was adopted: ''Motion made and seconded that manager Mr. Eckenbeck be authorized to sign corporation notes for money for purpose of buying grain.''

At the close of all the evidence the court sustained a motion that the jury be directed to return a verdict for the plaintiff in the sum of $2,017.62 and interest, upon the ground that since the pleadings admit the execution of the note and its indorsement by the individual defendants prior to its delivery, it was not a conditional delivery, but rather a condition as to the means by which the money should be paid; that the elevator company received the money and entered it upon its books

as a credit; that the directors of the elevator company met in January and went over the books and had knowledge of the whole transaction. Judgment was entered for plaintiff in the sum of $2,235.09, the balance due upon the note in suit, and interest. Defendants appeal.

Appellants assign two errors of the trial court. The first [1] is in overruling their objection to the receipt of the note in evidence because, while the signing of it is admitted, the answer affirmatively alleges that it was given without consideration and the pleadings deny that plaintiff was the owner or holder thereof and that anything was due thereon. They rely upon section 8423 of the Revised Codes of 1921. The last paragraph thereof reads: "Where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved." In *Madden* v. *Gaston,* 137 App. Div. 294, 121 N. Y. Supp. 951, it was held, upon language identical with this section, that the production of checks by the plaintiff raises a presumption of a valid and intentional delivery of them to the payee by the maker. The note was properly admitted.

The second assignment is that the drafts were drawn by [2] A. F. Eckenbeck, the manager of the elevator company, without authority from its board of directors and against the understanding of the parties. It is difficult to understand upon what theory counsel for appellants can claim that the money was advanced over the explicit instructions of the defendants, without their knowledge and against their will, as they do in their brief. The evidence conclusively shows that Mr. Eckenbeck, when he bought and shipped the grain and attached drafts to the bills of lading, was acting well within the scope of his authority, and that the directors of the elevator company, with full knowledge of all the facts, asquiesced therein and accepted the benefits to be derived therefrom. (*Calvert* v. *Idaho Stage Co.,* 25 Or. 412, 36 Pac. 24; *Martin* v. *Webb,* 110 U. S. 7, 28 L. Ed. 49, 3 Sup. Ct. Rep. 428 [see,

also, Rose's U. S. Notes] ; *Bank of United States* v. *Dandridge,* 12 Wheat. 64, 6 L. Ed. 552; 4 Fletcher's Ency. of Corporations, sec. 2204; sec. 11450, Rev. Codes 1921.)   The court was right in directing a verdict for the plaintiff.

Judgment affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.