STATE EX REL. SCHOOL DISTRICT, APPELLANT, *v.* TRUMPER, STATE SUPERINTENDENT OF PUBLIC INSTRUCTION, RESPONDENT.

(No. 5,368.)

(Submitted January 9, 1924. Decided February 2, 1924.)

[222 Pac. 1064.]

*Schools and Schools Districts—Superintendent of Public Instruction—Appeals—Interested Parties—Time—Limitation—Jurisdiction—Presumptions.*

Superintendent of Public Instruction—Appeal—What not a "Decision."
1. An informal letter written by the superintendent of public instruction to a county superintendent based on correspondence between them relative to an order of the latter abolishing a school district and approving his action did not debar the state superintendent from thereafter passing upon the same question when presented upon a formal appeal from the county superintendent's decision.

Same—Who may Appeal.
2. In the absence of express provision in section 966, Revised Codes of 1921, as to who may appeal from the decision of a county superintendent of schools, *held* that any person beneficially interested may appeal, and that a taxpayer or a member of the board of school trustees of the district respecting which the decision was made is an interested party.

Same—Time for Appeal—Limitation.
3. No time having been fixed by statute within which an appeal may be taken from the decision of a county superintendent of schools, and in the absence of regulations by the state superintendent with relation thereto, the appeal may be taken within a reasonable time after the making of the decision, a limitation of six months being deemed reasonable.

Same—Jurisdiction—Presumption.
   4.  In the absence of an affirmative showing of want of jurisdiction
   in the superintendent of public instruction on appeal from a decision
   of a county superintendent, jurisdiction and regularity of the proceed-
   ings will be presumed, and so long as the former acts legally and
   within the powers expressly conferred courts will not interfere by
   *certiorari.*

*Appeal from District Court, Richland County; Frank P. Leiper, Judge.*

CERTIORARI by the State of Montana, on the relation of School District No. 86, Richland County, to review a decision of May Trumper, as State Superintendent of Public Instruction. From a judgment dismissing the writ petitioner appeals. Affirmed.

*Mr. Carl L. Brattin,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Wellington D. Rankin,* Attorney General, *Mr. C. E. Collett* and *Mr. F. J. Matoushek,* for Respondent, submitted a brief; *Mr. C. N. Davidson* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an appeal from a judgment of the district court of Richland county dismissing and discharging a writ of review issued on petition of the appellant. It appears that on September 2, 1921, the county superintendent of schools of Richland county, without notice, made an order that school district No. 88 be abandoned and the territory embraced therein attached to school district No. 86, both districts being in said county. Thereafter on January 20, 1922, F. J. Matoushek, as attorney for L. J. Crippen, a school trustee of the district so abandoned and a resident taxpayer therein, addressed a letter to the state superintendent of public instruction, at Helena, wherein he stated: "It appears by chapter 106 of Session laws of the Sixteenth Legislative Assembly that you are required to 'decide all appeals from the decision of the county superintendent' and to 'prescribe and cause to be enforced

rules of practice and regulations pertaining to the hearing and determining of appeals,' and inasmuch as there seems to be no provisions of law for appeals to any one else but you under the provisions of law under which our county superintendent has acted in this instance, I shall appreciate if you will send me a copy of your rules and regulations pertaining to appeals from the county superintendent, and give me such other information as will enable me to comply with the rules and practice of your office.''

Reply thereto was made by the respondent on February 3, 1922, wherein she stated: ''In regard to the form in which your appeal from the decision of the county superintendent should be made I wish to state that in the few appeals which have been made to this department since I have been in this office, each side of the controversy has set forth in complete and clear form its reviews of the case and the opinion rendered by the individual having previous authority. I shall be glad to have you submit all evidence in the matter that you desire. It will not be necessary for anyone to appear in person, I believe.''

On the last-mentioned date the respondent addressed a letter to the county superintendent of schools, Mrs. Emogene Lectra, wherein it was stated: ''It appears an attorney of Sidney, Mr. Matoushek, is going to appeal from your decision regarding the discontinuance of one of your school districts and is going to submit to me in writing all of his evidence against its discontinuance. I wish you would put in ·proper form your side of the case outlining the history of it from the beginning. I shall retain on file the two letters of Mr. Crippen to add to your statement when it is received.''

On February 8, 1922, the county superintendent addressed. a letter to the respondent in reply, wherein explanation is made as follows: ''*In re,* declaring school district No. 88 an abandoned district and attaching it to school district No. 86 known as the Lambert school district, the reason for the abandonment and annexation of said school district No. 88 to

school district No. 86 is this: For years, school district No. 88 has not had satisfactory schools in which the children received a fair share of schooling. Letters I have sent you written to the trustees two years ago will explain this. The children live near enough to Lambert where there is a good graded school and high school, so that they can easily be transported and receive far better advantages than they have ever had. Furthermore, district No. 88 has failed to have the minimum number of months school in each year for the past two years. Last spring they had two months school with only two pupils, at an expense of something like $52.00 per pupil, two pupils from one family. On September 2 I made the order attaching said school district No. 88 to Lambert, which order you will find inclosed. After several weeks an appeal was made to District Judge Leiper. After taking the matter under advisement he found that he had no jurisdiction in the case.''

The order made by the county superintendent complained of, and to which reference is made in her explanatory letter to the respondent of February 8, 1922, is as follows: ''Whereas, it satisfactorily appears to the county superintendent of schools of Richland county, Montana, that no school has been held in school district No. 88, Richland county, Montana, for two consecutive years; and it further appearing to the satisfaction of said county superintendent that there is no immediate prospect of the need of a school in said district; and it further appearing to said county superintendent that school district No. 86 adjoins and lies contiguous with the said school district No. 88: It is therefore hereby declared and ordered, that the said school district No. 88 is an abandoned school district, and that the territory embraced in said abandoned school district, be, and the same is hereby, attached to the said school district No. 86; and it is further ordered, that all funds of said abandoned district be placed in the general school funds of the county after all debts of the said abandoned district have been paid.''

On February 13, 1922, one E. F. Whedon, clerk of school district No. 86, addressed a letter to the respondent, by her considered, wherein the facts represented are as follows: "District 86, which is the Lambert district, maintains a four year high school besides the grade school. We are a small district having only eleven sections with approximately $600,-000 valuation. Needless to say, our valuation is too small for the school system which we need. Our school draws on a great deal of territory as we have the only high school in the western part of Richland county and there is none at all close in Dawson county. If you will look at any map of Montana you will see the extent of our territory. We like many other districts found ourselves short of funds and in looking around we discovered that district 88 had not followed the laws, and consequently the county superintendent annexed 88 to our district which practically doubled our valuation and would place us in a fine condition financially. Without district 88 we could not bond for our outstanding indebtedness, which is largely for the school buildings and equipment, because of the constitutional limits. If we cannot get this indebtedness straightened out the high school will have to be entirely abandoned this next year. With district 88 we can place ourselves on a cash basis and really be in a fine condition financially. Now in regard to district 88. They have had practically no school in the last few years and what very few children (2 or 3) they have, have been coming to our school so that the people of 88 have been getting their children educated without paying for it. By all rules of fairness they should belong to our district, but naturally they didn't want to join because of the little extra cost for a time. Money apparently is the only consideration with them. Mrs. Lectra, the county superintendent, will verify my statement that in the past families have actually moved out of district 88 because they did not supply the means with which to educate the children within their district. District 88 has not had school within their district for two years with the exception of a month last spring

when the school was closed by the county superintendent because they had but two pupils and were wasting money. We held and the county superintendent held that this month of school was not legal, and consequently 88 was annexed to our district by the law which says that a district may be declared abandoned if no school is held for two years."

No further action having been taken by L. J. Crippen in the contemplated appeal to respondent herein, on February 25, 1922, the respondent addressed a letter to the county superintendent of schools reading as follows: "I wish to advise you that I have considered very carefully the question of the annexation of district No. 88 to the Lambert district and believe that district No. 88 will be in no way injured by such annexation. I, therefore, wish to express to you my approval of the action you have taken."

Thereafter, on or about March 10, 1922, L. J. Crippen made and filed with the respondent in writing a formal appeal from the order of the county superintendent made on September 2, 1921, as aforesaid, supported by his affidavit corroborated by that of one John J. Carey. As grounds of appeal it is set forth: "(1) That at the time the said order was made there was not, nor is now a foundation of facts warranting the making of such order in that it conclusively appeared from the official files and records of Richland county, Montana, pertaining to the said school district No. 88 and particularly from the records of the said county superintendent of schools of Richland county, Montana, and still does now appear, and the facts are that said school district No. 88 did, within a period of two years immediately preceding the said 2d day of September, 1921, duly and regularly keep open, maintain and operate its school, employ teachers, pay teacher's salary and other legal accounts and obligations, send children to school and pay for their attendance, hold meetings of its school trustees, and otherwise keep the said school district No. 88 functioning and in existence in accordance with the laws of the state of Montana, as will more fully appear by the

sworn affidavit of the appellant herein, and by a certified copy of the county treasurer of Richland County, Montana, ledger account, hereunto annexed and made a part of this appeal. (2) That no notice of any kind was ever given to your appellant or to any other person within said school district No. 88 relative to the said order of the annexation or consolidation of said school district No. 88. (3) That no petition or request of any kind was ever presented to the said county superintendent of schools of Richland county, Montana, for the abandonment and consolidation of said school district No. 88. (4) That no hearing was held or an opportunity accorded to your appellant and other persons and taxpayers residing within said district No. 88 to be heard in protest against the abandonment and consolidation of said school district No. 88. (5) That said order and decision is contrary to the laws of the state of Montana, and contrary to the facts existent at the time of the said order.''

Thereafter the respondent received a letter from L. J. Crippen, dated May 11, 1922, purporting to give facts in support of his appeal to respondent, and a letter bearing date May 15, 1922, from the county superintendent of schools wherein the latter states: *"In re* the abandonment of school district No. 88, on February 22 I received a letter from you saying that you approved of my action in declaring school district No. 88 an abandoned district. I, accordingly, divided the funds among the other districts. Later I was informed by their attorney, Mr. F. J. Matoushek, that they had appealed the case. They claimed that they held a school election, as usual. We have no record of it in our office; no ballots nor minutes of the meeting were sent in. On April 26 I ordered Mrs. Cooley to turn over her clerk's books to the clerk of S. D. No. 86, Mr. Edwin F. Whedon. While this matter has been pending, Mr. F. J. Matoushek asked me for an order on the treasurer to pay him $100.00 for lawyer's fees. Mrs. Cooley, the clerk, also presented a bill, asking $25.00 for her services as clerk during the past year. I refused to sign the

orders, claiming that they had been made after the district was dissolved. In my absence our county treasurer paid the bills, claiming that he did so because they were signed by L. J. Crippen, trustee of S. D. No. 88. I claimed that they had no right to this money while the appeal was still pending. I neglected to say that acting under the instructions of the county attorney, I ordered the books turned over after this money had been paid. I thought it no great matter if they did pay these bills, although legally there was no such debt existing when I, on September 2 ordered the annexation of the district, unless it might be that the clerk had money coming to her. If so, they could easily have spoken of it at that time. I claimed that Mr. Matoushek was acting for an individual and the suit was brought in the name of an individual instead of the trustees of school district No. 88; and that the county attorney was the legal adviser of the school trustees. Mr. L. J. Crippen, on May 12, writes me, refusing to have the clerk give up her books, on the ground that this is not yet settled.''

On June 22, 1922, the county superintendent submitted a detailed statement of all the facts in the case to the respondent, and thereafter on January 13, 1923, a letter was addressed by the respondent to E. J. McCullough, the successor of Mrs. Lectra, as county superintendent, reading as follows: ''I am writing to advise you that my decision in the case of the appeal of Mr. L. J. Crippen against the transfer of district No. 88 to the Fairview district is that district No. 88 could not be abandoned, legally, as was done by the former county superintendent of Richland county, owing to the fact, that school had been maintained in the district within a period of two years before the consolidation was made by the county superintendent.''

The letter of E. J. McCullough, dated January 19, 1923, written in reply to respondent's letter of January 13, 1923, announcing her decision in the case, indicates the complications giving rise to the petition made to the court for a writ

of review. He states: "The main trouble now arises over the fact that upon the records here it shows that Mrs. Lectra abandoned Dist. 88 Sept. 2, 1921, and that upon February 24, 1922, she had received a decision from you stating that you approved her action and she has copied a part of your letter upon the records to show that fact. Then the Lambert Dist. No. 86 bonded and the several county officers, Mrs. Lectra included, swore to the bonding company that this territory, which included Dist. No. 88, was a part of Dist. No. 86 and everything was all right. All of the apportionments have been coming into the funds of Dist. No. 86 and the money was spent, I may say, before it was apportioned. Now, they tell me that your present decision changes everything from our present way of handling the funds and I must order the treasurer to place funds in Dist. 88 again. I do not know what will happen but it appears there may be action in the courts to decide matters."

The only question presented is whether the respondent acted in excess of jurisdiction in making her second order in the premises. This must be determined from the record returned in obedience to the writ, from which the above recital of facts is made.

The Revised Codes of 1921 provide:

Section 955: "The county superintendent shall have the general supervision of the public schools in his county."

Section 956: "He shall carry into effect all instructions of the state superintendent given within his authority."

Section 966: "He shall decide all matters in controversy arising in his county in the administration of the school law or appealed to him from the decision of school officers or boards. An appeal may be taken from his decision, in which case a full written statement of the facts, together with the testimony and his decision in the case, shall be certified to the state superintendent for his decision in the matter, which decision shall be final, subject to adjudication of the proper legal remedies in the state courts."

Section 943: "He [superintendent of public instruction] shall counsel with and advise county superintendents upon all matters involving the welfare of the schools; he shall, when requested, give them written answers to all questions concerning the school law. He shall decide all appeals from the decisions of the county superintendent, and may for such decision require affidavits, verified statements, or sworn testimony as to the facts in issue. He shall prescribe and cause to be enforced rules of practice and regulations pertaining to the hearing and determining of appeals, and necessary for carrying into effect the school laws of the state."

From the facts it appears to us that respondent's letter of [1] approval of the order of the county superintendent, dated February 27, 1922, is not a decision on appeal such as is contemplated by the statute. It is merely an informal letter of approval of the action of the county superintendent from facts at hand shown from correspondence. Later a formal appeal was presented to the respondent in the matter for decision in conformity with such rules as respondent had promulgated. This brought the subject to the attention of respondent for the first time formally on appeal, and she was in no way debarred by what had gone before from receiving evidence and determining the questions thus presented to her for decision.

In the absence of express provision in the statute as to who [2] may appeal, it must be held that the right of appeal is given to any person beneficially interested. We think L. J. Crippen showed himself sufficiently interested, being a member of the board of school trustees of district 88 and a resident taxpayer therein. (*State ex rel. Bean* v. *Lyons*, 37 Mont. 354, 96 Pac. 922.) Had he done no more than to show that he was a taxpayer in school district No. 88, in our opinion it would have been sufficient.

No time being fixed by statute within which such appeals [3] may be instituted, and respondent having made no regulations on the subject, we are of opinion, and so hold, that the ap-

peal may be perfected within a reasonable time after the making of an order by the county superintendent. What is a reasonable time must depend on the facts of each particular case. Here the order of the county superintendent was made September 2, 1921, and the appeal was not taken by Mr. Crippen until March 10, 1922, just a little more than six months after the making of the order complained of. Under all the facts and circumstances in this case, it appears to us to have been taken in time. Unreasonable delay in perfecting such an appeal should alone be sufficient to defeat it, more particularly so where the rights of third persons are or may be affected by disturbing the order complained of. Some legislation should be made to cover the subject, and in the absence thereof, we think a regulation should be promulgated by the state superintendent of public instruction. An appeal from a final judgment of the district court in a civil action must be taken within six months after the entry of the judgment (sec. 9732, Rev. Codes 1921) and we believe this limitation as to time will furnish a safe standard to be followed by the state superintendent in consideration of such appeals.

Appeal to the state superintendent having been made by Crippen, the county superintendent having appeared, and the respondent having entertained jurisdiction thereof, objection now advanced on the ground of want of right vested in Crippen to appeal and delay in perfecting the same comes too late. All appeared and consented to respondent's jurisdiction in the premises, and the decision made is not now vulnerable to attack by the parties to the proceedings on the appeal.

We think it was incumbent upon the appellant to show [4] affirmatively that the respondent acted without jurisdiction, and, in the absence thereof, her jurisdiction and regularity of the proceedings will be presumed. As is well stated by Professor Mechem in his excellent work on Public Offices and Officers: ''The well-known presumption of the law that public officers have acted within their jurisdiction, and have pursued and observed the limits set by law to their authority, applies

here (to writs of review) as elsewhere, and the party applying for the writ must be prepared to show wherein the alleged defects or irregularities exist." (Sec. 1009.)

"Where authority to establish or alter school districts is delegated to subordinate agencies or officers, provision is made by statute in many jurisdictions for appeals from their action. But in the absence of statute authorizing it the courts will not interfere with the action of school trustees and like officials in forming or altering school districts, unless fraud, corruption, oppression, or gross injustice is clearly shown; and where by statute an appeal is provided for from one official or set of officials to another the same rule applies as to reviewing the actions of the latter." (35 Cyc. 835.)

The statute is plain, and from the language thereof the jurisdiction of the respondent to entertain and determine the controversy is beyond question. Appeals in such matters involving the administration of the public schools have been conferred by the legislative assembly exclusively upon the state superintendent of schools, and so long as she acts legally and within the power expressly conferred the courts will not interfere. (24 R. C. L. 575.)

Nothing said in this opinion is to be so construed as to foreclose the rights of bondholders against the property of the school districts attempted to be consolidated, nor of third parties claiming vested rights, if any there be. The laxity of the proceedings taken by both the county and state superintendents impel us to thus safeguard the effect of this decision.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.