PETERSON, APPELLANT, *v.* SCHOOL BOARD ET AL., RESPONDENTS.

(No. 5,736.)

(Submitted May 16, 1925.  Decided May 21, 1925.)

[236 Pac. 670.]

*Injunction—Schools and School Districts—Trustees—Refusal to Admit Nonresident Pupil—Discretion—Remedy by Appeal to School Authorities—Estoppel.*

Schools and School Districts—Injunction to Control Action of Trustees Does not Lie, When.
  1.  A court of equity will not take jurisdiction to control the action of a board of school trustees by injunction, or other means, where the party aggrieved has a plain, speedy and adequate remedy at law.
Same—Trustees—Admission of Nonresident Pupils—Discretion.
  2.  In the exercise of the power. conferred upon school trustees by section 1015, Revised Codes, to admit nonresident pupils and to fix the amount of tuition to be charged them, the board acts in a *quasi*-judicial capacity, and with the proper exercise of its discretion and judgment in that regard the courts will not interfere.
Same—Trustees—Courts will not Take Jurisdiction of School Controversies Until Remedy by Appeal to School Authorities Exhausted.
  3.  In view of section 966, Revised Codes, providing for appeal to the county superintendent of schools from the decision of a school board and for an appeal to the state superintendent of schools from the decision of the county superintendent, a court will not assume jurisdiction of a controversy arising out of the determination by a school board of the question whether a pupil was or was not a resident of the particular district, until the remedy thus provided has been exhausted, unless the board has acted without or in excess of its jurisdiction.
Same—Estoppel by Acceptance of Benefits—Inapplicability of Doctrine.
  4.  Under the rule that in order to create an estoppel by acceptance.

[73 Mont. 442.]

of benefits the party against whom the estoppel is claimed must have acted with knowledge of the facts and of his rights, *held* that where a board of school trustees had by mistake in previous years included the name of a nonresident pupil in the enumeration of resident children and on the strength of such enumeration had received an increased amount of public money on apportionment of school funds, it was not estopped from striking the name from the roll upon discovery of the error.

---

Estoppel, 21 **C. J.**, sec. 192, p. 1190, n. 11.
Injunctions, 32 **C. J.**, sec. 395, p. 251, n. 5.
Schools and School Districts, 35 **Cyc.**, p. 1113, n. 27; p. 1116, n. 57 New; p. 1119, n. 82.

*Appeal from District Court, Cascade County; H. W. Ewing, Judge.*

SUIT by W. W. Peterson for injunction against the School Board of School District No. 1, Cascade County. Decree for defendants and plaintiff appeals. Affirmed.

*Mr. Fred A. Ewald,* for Appellant, submitted a brief and argued the cause orally.

*Mr. J. W. Speer,* for Respondent, submitted a brief and argued the cause orally.

## OPINION: PER CURIAM.

In May, 1924, the board of trustees of school district No. 1 in Cascade County adopted a resolution to the effect that, beginning with the opening of the school term in September, 1924, a tuition fee of $110 per school year would be charged each nonresident pupil attending the high school maintained by that district, the fee to be paid in advance. Later the resolution was amended to permit one-half of the fee to be paid at the opening of the term, and the remainder to be paid at the opening of the second semester of the term. Wyman Peterson, a pupil of school age attending the high school in district No. 1, paid the first installment of the fee for the school term commencing September 2, 1924, but refused to pay the second installment, and the board thereupon or-

dered that he be excluded during the second semester unless the remainder of the fee was paid. W. W. Peterson, the father of Wyman, then instituted this action, and secured a temporary injunction restraining the board and its clerk from carrying the order into effect. The trial of the cause to the court without a jury resulted in an order dissolving the injunction and a judgment dismissing the complaint. From the judgment and order plaintiff appealed.

. In his complaint the plaintiff alleges that he and his son are, and for a long time have been, residents of Cascade county and of school district No. 1 therein. That allegation is denied in the answer, and it is alleged affirmatively that plaintiff and his son are residents of Teton county; that the board made an investigation of the question of their residence, and determined that they are not residents of Cascade county or of school district No. 1. At the opening of the trial counsel for defendants interposed a motion to dismiss the complaint, because it failed to disclose that the plaintiff had exhausted his remedy at law; that is to say, it failed to disclose that an appeal had been taken from the order of the board to the county superintendent of schools of Cascade county. The court reserved its ruling upon the motion until plaintiff had presented his evidence, and then concluded that it did not have jurisdiction to determine the controversy, and sustained the motion.

It is apparent at once that the controversy revolves about the question: Is Wyman Peterson a *bona fide* resident of school district No. 1 or of Cascade county; or is he temporarily in district No. 1 merely for the purpose of gaining the advantages of the facilities afforded by the high school maintained by that district? If he is a *bona fide* resident of the district, he is entitled to attend the high school without paying tuition; if he is a resident of Cascade county but not a resident of school district No. 1, he is entitled to attend the high school under the provision made by Chapter 19, Laws of 1923, pro-

vided a county high school is maintained by the county, and if in the judgment of the board "there is sufficient room." (Subd. 20, sec. 1015, Rev. Codes.) If he is a resident of Teton county, he is not entitled to attend the high school in district No. 1 of Cascade county except upon the payment of the tuition fee prescribed. These propositions are not open to serious controversy.

The single question presented by the appeal is: Did the trial court have jurisdiction, in the first instance, to determine the question of residence?

It is elementary that, if plaintiff had a plain, speedy and [1] adequate remedy at law, the trial court sitting as a court of equity did not have jurisdiction to control the action of the board by injunction or other means. (*Wilson* v. *Harris,* 21 Mont. 374, 54 Pac. 46; *Raymond* v. *Blancgrass,* 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac. 648; *Kaufman* v. *City of Butte,* 48 Mont. 400, 138 Pac. 770; *Philbrick* v. *American Bank & Trust Co.,* 58 Mont. 376, 195 Pac. 59; *State ex rel. Stephens* v. *Zuck,* 67 Mont. 324, 215 Pac. 806.)

Section 1056, Revised Codes, provides that: "Every public school not otherwise provided for by law shall be open to the admission of all children between the age of six and twenty-one years residing in the school district, and the board of trustees shall have the power to admit children not residing in the district," *etc.*

Section 1015 enumerates the powers and duties of a board [2] of school trustees, and among others, the power and duty "to determine the rate of tuition of nonresident pupils" are imposed upon the board. Since authority to admit nonresident pupils is conferred upon the board of trustees, and the power and duty to fix the amount of the tuition to be charged such nonresident pupils are likewise imposed upon the board, it follows necessarily that the board must determine, in the first instance, who are and who are not nonresident pupils. In this, and all like questions properly coming before them,

the members of the board act in a *quasi*-judicial capacity, and, with the proper exercise of their discretion and judgment, the courts will not interfere.

Thus, in *Wilson* v. *Board of Education,* 233 Ill. 464, 13 Ann. Cas. 330, 15 L. R. A. (n. s.) 1136, 84 N. E. 697, where the Chicago school board had adopted a rule that any pupil known to belong to a fraternity or sorority would be denied the right to represent the school in any literary or athletic contest, and relators, coming within the prohibition, sought to enjoin the board from enforcing the rule, the supreme court of Illinois said: "It is for the board of education, within the reasonable exercise of its power and discretion, to say what is best for the successful management and conduct of the schools, and not for the courts."

And in *Commonwealth ex rel. Boyd* v. *School Directors,* 211 Pa. 637, 61 Atl. 247, where it was sought by *mandamus* proceedings to compel the admission of a pupil declared by the board to be a nonresident, the trial court said: "When the question of residence and right to admission is therefore raised it is for the determination of the board of directors of the particular district. The decision of the board, after hearing and investigation, is *quasi* judicial. That a judge or jury might reach a different conclusion upon the evidence presented is of no concern. * * * Being required by the statute to establish a sufficient number of public schools for the education of every individual between the ages of six and twenty-one years, in their respective districts, they are equally required to protect those schools from the encroachments of those who are not entitled to admission therein. It would greatly impair the government and efficiency of the common schools if the honest judgment and the discretion of the board, exercised in good faith, could be reviewed and reversed by a jury." The supreme court contented itself with the affirmance of the judgment "on the opinion of the court below."

Section 966 provides that the county superintendent of schools ''shall decide all matters in controversy arising in his county in the administration of the school law or appealed to him from the decision of school officers or boards. An appeal may be taken from his decision, in which case a full written statement of the facts, together with the testimony and his decision in the case, shall be certified to the state superintendent for his decision in the matter, which decision shall be final, subject to adjudication or the proper legal remedies in the state courts.''

If a controversy arises between a given school board and a [3] pupil over the question of the pupil's residence in the particular district, the controversy should be settled, if possible, by the school authorities, and resort to the courts should be had only in the event that the school officers are unable to satisfy the demands of the parties to the controversy. This was manifestly the intention of the legislature in enacting section 966 above. Under like statutory provisions, it is held generally that the courts will not assume jurisdiction of the controversy or undertake to adjudicate the rights of the parties until the remedy provided by law has been exhausted.

Thus, in *School District* v. *Bank* (Tex. Civ.), 227 S. W. 974, the Court of Civil Appeals of Texas said: ''There is no allegation in the application for *mandamus* that appellees had exhausted their remedy of appeal to the superintendent of public instruction, which is given by Article 4510, Revised Statutes. In that article that officer is given the authority to hear and determine all appeals from the rulings of subordinate school officers, and * * * an appeal to and decision by the state superintendent is absolutely essential to give a court the authority to pass upon the question. It seems to be the fixed policy of the legislature to create an educational system of public free schools that is sufficient unto itself and free as far as practical from any interference by the judiciary. The courts fully recognize the desire of the legislative branch

\* \* \* and uniformly hold that the remedies provided for before school authorities must be exhausted before the courts will interfere.''

In affirming the judgment of the trial court dismissing an action to enjoin the county superintendent from hearing an appeal, the supreme court of Colorado called attention to the statute authorizing such an appeal, and declared: ''The procedure for reviewing the decisions and orders of the district board in matters of law or fact being provided and the officer and tribunal to hear and determine such matters having been thus designated, \* \* \* the courts have no right to interfere with them in the proper discharge of such duties.'' (*School District* v. *County Superintendent,* 36 Colo. 393, 85 Pac. 696.)

In *Kinzer* v. *Directors of Independent School Dist. of Marion,* 129 Iowa, 441, 6 Ann. Cas. 996, 3 L. R. A. (n. s.) 496, 105 N. W. 686, the court reversed an order granting a writ of mandate, declaring that: ''It is plainly intended \* \* \* that the management of school affairs should be left to the discretion of the board of directors, and not to the courts,'' and that ''the method provided for reviewing the proceedings of a school board, either as to law or fact, relating to a subject which is within their jurisdiction \* \* \* is by appeal to the county superintendent.'' The court held that such appeal was a ''plain, speedy, and adequate'' remedy, and *mandamus* would not lie. To the same effect are *Edwards* v. *State,* 143 Ind. 84, 42 N. E. 525, *Commonwealth* v. *School Directors,* and *Wilson* v. *Board of Education, supra.*

These authorities are all in accord with the declaration of this court in *State ex rel. School District* v. *Trumper,* 69 Mont. 468, 222 Pac. 1064, where, in commenting upon the statute under consideration, this court said: ''The statute is plain, and from the language thereof the jurisdiction of the respondent to entertain and determine the controversy is beyond question. Appeals in such matters involving the administra-

tion of the public schools have been conferred by the legislative assembly exclusively upon the state superintendent of schools, and so long as she acts legally and within the powers expressly conferred, the courts will not interfere.''

A number of cases have been brought to our attention in which courts have assumed to act in the absence of an appeal taken to the school officials, but we find no conflict in these decisions with the authorities above · cited. Those cases were decided because the facts in each thereof disclosed that the board under investigation had acted without jurisdiction or in excess of its powers. On such a showing the party aggrieved may apply, in an appropriate proceeding, to the courts. (*Valentine* v. *Independent School Dist.,* 187 Iowa, 555, 6 A. L. R. 1525, 174 N. W. 334; *School District* v. *Union High School,* 25 Colo. App. 510, 139 Pac. 1039; *Miller* v. *Dailey,* 136 Cal. 212, 68 Pac. 1029; *Knowlton* v. *Baumhover,* 182 Iowa, 691, 5 A. L. R. 841, 166 N. W. 202.) Of these cases, the *Valentine Case* is typical. A pupil, having successfully completed her course and complied with all rules and regulations of the board up to the time of the commencement exercises, refused to wear a cap and gown provided by the board under a rule requiring the graduates to wear such caps and gowns during such exercises. She sought by *mandamus* to compel the issuance of her diploma. The trial court denied the writ, and on appeal the supreme court held that the rule had nothing to do with the qualifications of the relatrix, and was unreasonable and arbitrary, and therefore reversed the order of the trial court. In disposing of the question of jurisdiction, the writer of the opinion said: ''It is further contended by appellees, and this is their principal argument, that plaintiff's remedy was by appeal to the county superintendent, under Code section 2818. * * * For myself, I am not so sure but that this course should have been taken. And yet, the holdings are that the courts may determine whether or not school boards have acted within the scope of

their powers. The rule is, briefly stated, that a party complaining of a rule is not limited to an appeal to the county superintendent, if the rule is unreasonable, and not within the scope of the powers conferred upon the board." This modification of or exception to the general rule has no application to the case at bar as clearly the school board of district No. 1 of Cascade county was acting within the scope of the authority vested in it by statute.

Counsel for plaintiff contends that, in any event, the de-
[4] fendants are estopped to raise the question of residence, for the reason that in September, 1922, and again in September, 1923, the clerk of district No. 1 made an enumeration of all children of school age residing in the district, and made report thereof to the county superintendent of schools of Cascade county, all in pursuance to the provisions of section 1051, Revised Codes; that in the enumeration made in each of those years the clerk included the name of Wyman Peterson; that the public school funds were apportioned to and received by district No. 1 based upon such enumeration, and the district received the benefit of an increased amount of public money upon the report and representation that Wyman Peterson was a resident of the district. It is alleged further that in September, 1924, the name of Wyman Peterson was again included in the enumeration of children of school age residing in district No. 1, but that later, without the knowledge or consent of plaintiff, the name was stricken from the enumeration roll.

If, during the current year, district No. 1 were receiving public school moneys based upon an enumeration which included the name of Wyman Peterson, there might be ground for the contention that the defendants are estopped to say that he is not a resident of the district (*Board of Education* v. *Hobbs*, 8 Okl. 293, 56 Pac. 1052; *Edwards* v. *State*, above), but that is not the case. It is not alleged that, at the time the enumeration was made in 1922 or in 1923, the board or

the clerk was in possession of the facts concerning the presence of Wyman Peterson in district No. 1; whereas the conclusion from the pleadings is compelled that, after investigating and ascertaining the facts as they were made to appear to the board, the board caused the enumeration for 1924 to be corrected and the name stricken from the roll, and that for the current school year the district is not receiving a portion of the public funds computed upon an enumeration which includes Wyman Peterson as a resident of the district.

It is the general rule that, in order to create an estoppel by acceptance of benefits, it is essential that the party against whom the estoppel is claimed shall have acted with knowledge of the facts and of his rights. (21 C. J. 1207; 10 R. C. L. 694.) The rule was recognized by this court in *Ely, Salyards & Co.* v. *Farmers' Elevator Co.*, 69 Mont. 265, 221 Pac. 522. The facts alleged do not constitute an estoppel.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.