## PIGOTT v. BOARD OF CANVASSERS OF CASCADE COUNTY.

[Submitted November 18, 1892.   Decided November 19, 1892.]

ELECTIONS — *Duties of canvassing board — Regularity of nomination — Prohibition.* — A county board of canvassers has no authority to inquire into the validity of a certificate of nomination of a nominee for office, and therefore, where the election returns are genuine and properly certified, prohibition will not lie to restrain the board from canvassing such returns and counting the vote cast for such person, as required by sections 4 and 6, pages 301, 302, Laws of the Second Session, upon the ground that the nomination was invalid.

Original proceeding.   Application for writ of prohibition. Motion to quash writ sustained.

*H. J. Haskell*, Attorney-General, *B. Platt Carpenter*, and *Preston H. Leslie*, for the motion.

*A. J. Shores*, and *Ransom Cooper*, contra.

BLAKE, C. J. — This is an application for a writ of prohibition to restrain the board of county canvassers of the county of Cascade from canvassing and counting the votes appearing upon the abstract of returns of the voting precincts to have been cast for Charles H. Benton as the candidate of the People's party, and also the candidate of the Republican party, for the office of district judge of the Eight Judicial District of this State.   It is alleged in the affidavit that the relator was nominated by the Democratic party for this office, and received at the election held November 8, 1892, a higher number of votes than said Benton as the candidate of either of said parties; that the combined vote of said parties for said Benton exceeds the vote for the relator; and that the respondent will, unless prohibited by this court, count for said Benton all the votes cast for him as the candidate of said People's party and Republican party.

It is claimed by the relator that the certificates of nomination of said Benton by the said parties are void; that said Benton was not nominated according to law; and that the respondent has no authority to count said votes for said Benton.

A motion to quash the writ has been filed by the respondent. It is not necessary to comment on all the grounds which have been discussed upon this hearing. It is maintained by the respondent that the writ of prohibition cannot be resorted to by the relator, but we have assumed, for the purpose of determining this motion, without expressing an opinion thereon, that this proceeding affords a remedy.

What, then, are the duties of the board of county canvassers under the statute?

" The canvass must be public, by opening the returns, and determining therefrom the vote of such county or precinct for each person voted for, and for and against each proposition voted upon at such election, and declaring the result thereof." (Stats. 2d Sess. p. 301, § 4.)

"The board must declare elected the persons having the highest number of votes given for each office to be filled by the votes of a single county or subdivision thereof." (Stats. 2d Sess. p. 302, § 6.)

The relator insists that the board of county canvassers has the right to examine the certificates of the nomination of said Benton, and ascertain whether the law relating thereto has been complied with, and that the counting or rejection of the votes cast for said Benton depends upon the result of this investigation. The statute, *supra*, seems to be clear in defining the duties of the canvassing board, and conforms to the principles laid down by the courts. The observations of Mr. Paine, in his work on Elections, should be considered in weighing these propositions: "The simple duty of the canvassing board is to declare the apparent result of the voting. All other questions are to be tried before the tribunal invested with jurisdiction of cases of contested elections." (Paine on Elections, § 603.) "When papers are presented as returns to county, district, or State canvassers, it becomes the duty of the canvassers to determine, on inspection of the papers, whether they are, in form and substance, legal returns, and also to determine, on inspec-

tion of the papers, and on· consideration of the mode of their presentation, whether they are authentic returns. The canvassers, having decided that the documents are legal and authentic returns, are not permitted, by the statutes generally in force in the United States, to 'go behind the returns' for any purpose, but are required to canvass the votes, as ministerial officers, strictly in accordance therewith." (Paine on Elections, § 604.) "Canvassers, in the exercise of ministerial functions only, have no power to canvass, as election returns, any papers not duly authenticated, in the mode prescribed by law." (Paine on Elections, § 614.)

The statute regulating the nomination of district judges was approved March 13, 1889. The sections, *supra,* concerning the power of the board of county canvassers, were enacted March 7, 1891, but similar provisions were in force for a long period within the Territory. We are unable to find in these acts any language which changes the rules which have always been followed, and authorizes the respondent to inquire into the validity of the nomination of said Benton for office. We are therefore of the opinion that the returns of the voting precincts of the county of Cascade, being legal and authentic, must be canvassed, and the votes cast for said Benton for said office must be counted. There is no allegation in the affidavit of the relator that these returns are in any respect irregular or defective. We hold, for these reasons, that the affidavit does not disclose a proper case for the issuance of the writ.

It is ordered that the motion to quash the writ be sustained.

*Writ quashed.*

HARWOOD, J., and DE WITT, J., concur.