STATE OF MONTANA ex rel. GERTRUDE SAXTORPH, RELATOR, v. DISTRICT COURT, FERGUS COUNTY, ET AL., RESPONDENTS.

No. 9432.

Submitted June 15, 1954. Decided October 19, 1954.

275 Pac. (2d) 209.

Messrs. DeKalb, Dockery & Symmes, Mr. Weymouth D. Symmes and Mr. Raymond E. Dockery, Jr., Lewistown, for relators.

Mr. J. E. McKenna, County Atty., Mr. Donald E. Ronish, Deputy County Atty., Lewistown, for respondents.

Mr. Symmes, Mr. H. Lenoard DeKalb, Mr. McKenna and Mr. Ronish argued orally.

MR. JUSTICE FREEBOURN:

This is an original proceeding wherein the relator, Gertrude

Saxtorph, petitioned this court to issue a writ of review directed to the respondent district judge, whereby relator sought to quash and vacate a writ of prohibition issued by such judge.

Gertrude Saxtorph had been a teacher of mathematics in the junior high school in Lewistown, Fergus County, Montana, since January 1, 1946, under a secondary certificate from the State of Montana, which permitted her to teach in any public school in the State of Montana, in any grade from the fifth through the twelfth. Such certificate to teach was issued in 1927.

Relator taught as a full time teacher from 1946 to the summer of 1949, when at the request of the school board having jurisdiction over such junior high school, she went on a part time teaching basis, having classes only in the morning and teaching 17 hours a week.

By letter, dated March 25, 1954, the school board, through the superintendent of schools of Fergus County, notified relator that at a March 24, 1954, meeting of the school board "a motion was made that Gertrude Saxtorph not be rehired for 1954-55 school year and that she be so advised in writing before April 1, 1954."

Requested to reconsider its action in not rehiring relator, the school board after hearing had on April 12, 1954, refused to rehire relator.

The reasons for dispensing with relator's services as a teacher are set out in the letter dated April 27, 1954. In part it reads: "As you are no doubt aware, the Board at a meeting held on March 24, 1954, passed a motion that you would not be rehired for the 1954-55 school year, and you were notified to that effect by letter dated March 25, 1954. Thereafter you requested the School Board to state clearly and explicitly the specific reasons for the failure of such reemployment and in accordance with this request advised you in writing * * * by a letter dated March 30, 1954, * * * the reasons given were as follows: * * *

" 'That it is necessary for making assignments that as much part time teaching as possible be eliminated; that it is not possible to elect any Junior High School academic classroom teacher

on a part time basis hereafter under the conditions now existing; that through experience of the past, half-time teachers do not have the same relationship to the school, the pupils and the parents as a full time teacher; that there is a definite loss of efficiency from teachers employed on a part time basis, which increases the problems relating to programming the classes, and that the school must have first claim on the time and interests of those employed as teachers; that therefore, the said Board of Trustees has determined that your part time teaching position be abolished and eliminated.'

"By your letter dated April 2nd, 1954, * * * you requested a hearing and reconsideration of said board's decision not to rehire you, and the Board of Trustees met for the purpose of holding such hearing on April 12th, 1954.

"'* * * after such reconsideration our decision remains the same * * * that your services as a teacher will not be required for the ensuing school year of 1954-55.

"Although full-time vacancies in the teaching staff have occurred since our motion not to rehire you was passed, it does not follow in our opinion that you are thereby automatically qualified for appointment as a full time teacher, nor does the fact of such vacancies among the full time teaching staff render our decision not to rehire you null and void.

"'* * * since said time, [March 30th, 1954] because of your actions and because of the statements made by your attorneys to certain persons * * * we now deem it necessary * * * that all these reasons be now set forth. These reasons are given now as a part and in support of our first reason hereinbefore presented to you in our letter dated March 30th, 1954. * * *

"(1) Mrs. Saxtorph has caused the emotional stability of the school to be upset by declaring publicly before parents and school children and by sworn affidavit that the school system has retrogressed twenty years these past five months, and by demanding the discharge of the school superintendent and by criticizing the present school superintendent and school board;

"(2) You have openly, publicly and arbitrarily inflamed

public sentiment against the school superintendent and school administration to the detriment of the school;

"(3) You have sought to degrade the school superintendent by seeking to submit him to cross-examination by attorneys at a public meeting not called for that purpose, but for the purpose of public discussion and to discuss the reasons for the failure to grant a new contract to three teachers other than yourself, none of whom had attained tenure;

"(4) You have contacted members of the Board of Trustees, as individuals, rather than as a board, for the purpose of criticizing the school administration and to entice and convince them that they should discharge the present school superintendent;

"(5) You have generally, over a period of several weeks, stirred up public strife by publicly carrying an attitude of antagonism towards the school board and the superintendent of the city schools, by publicly denouncing said school board and superintendent in public meetings and on the streets of the city of Lewistown, and your attitude has been one of antagonism and insubordination towards the present school Board and the present superintendent of said schools;

"(6) That your public denunciation of the schools has disturbed the administration and thinking of the students who are attending school to a state of hysteria and unrest to such a degree that it has disrupted the orderly conduct of the said school system and interrupted the progress of the students in their scholastic achievements. * * *"

Relator immediately filed her written appeal from the school board's decision with the county superintendent of schools of Fergus County, who set such appeal for hearing on May 28, 1954.

On May 18, 1954, the school board filed a petition in the district court praying for an alternative writ of prohibition directed to the county superintendent of schools to show cause why she should not "desist and refrain from further and all proceedings in a proceeding entitled 'In the matter of Gertrude Saxtorph' [relator's appeal from the decision of the school board to the county superintendent of schools], * * * and that she be re-

strained from hearing the said appeal of said matter, or to try the same whatsoever," and that the court direct the county superintendent of schools "pending the hearing of the above-entitled matter and the further order of this court, desist and refrain from proceeding with the trial of said matter before the said county superintendent of schools, or having any other proceedings therein * * *"

Upon the filing of the school board's petition, the district court, on May 25, 1954, issued an alternative writ of prohibition, setting such petition for hearing on June 10, 1954. Such alternative writ of prohibition restrained and prohibited the county superintendent of schools from hearing relator's appeal until further order of the court, and directed such county superintendent of schools to show cause at the June 10th hearing "why you should not be absolutely and permanently restrained from any further proceedings in said matter."

On May 26, 1954, relator filed a petition for a writ of review in this court seeking to quash and vacate the district court's alternative writ of prohibition and to halt the hearing thereon set for June 10, 1954. This court heard oral arguments in the matter by counsel for relator and respondents on June 8, 1954.

The writ of prohibition lies against the county superintendent of schools only if she is acting without or beyond her jurisdiction. "The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person, whether exercising functions judicial or ministerial, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person." R. C. M. 1947, sec. 93-9201.

"The same [writ of prohibition] may be issued by the supreme court or the district court, or any district judge, to any inferior tribunal, or to a corporation, board, or person, in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law. It is issued upon affidavit on the application of the person beneficially interested." R. C. M. 1947, sec. 93-9202.

In State ex rel. Myersick v. District Court, 53 Mont. 450, 164

Pac. 546, 547, this court said: "The writ of prohibition is an extraordinary judicial writ which issues, not as a matter of right, but only in the sound legal discretion of the court. State ex rel. Lane v. District Court, 51 Mont. 503, 154 Pac. 200, L. R. A. 1916E, 1079. It is to be used sparingly for the furtherance of justice and to secure order and regularity in the inferior tribunals. It arrests proceedings of a judicial character when such proceedings are without or in excess of jurisdiction (Rev. Codes, sec. 7227 [Rev. Codes 1907, R. C. M. 1947, sec. 93-9201]), but it issues only when there is not a plain, speedy and adequate remedy in the ordinary course of law. (Rev. Codes, sec. 7228 [1907, R. C. M. 1947, sec. 93-9202]; State ex rel. Browne v. Booher, 43 Mont. 569, 118 Pac. 271.)" See Boucher v. St. George, 88 Mont. 162, 293 Pac. 315.

In State ex rel. Scharnikow v. Hogan, 24 Mont. 379, 62 Pac. 493, 494, 51 L. R. A. 958, this court said: "In 1895, section 579, supra, was supplanted by section 1980 of the Code of Civil Procedure of that year, which reads: 'The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person, whether exercising functions judicial or ministerial, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person [R. C. M. 1947, sec. 93-9201; R. C. M. 1935, sec. 9861; R. C. M. 1921, sec. 9861; R. C. M. 1907, sec. 7227].' And it may be argued that by virtue of the change worked by means of the incorporation of the words, 'whether exercising functions judicial or ministerial,' the supreme court possesses the right to issue the writ of prohibition to an officer exercising ministerial functions only. Although, as was held in State [ex rel. Boston & M. Consol. Copper & Silver Mining Co.] v. Second Judicial District Court, supra [22 Mont. 220, 56 Pac. 219], the section as it now stands does not change the scope of the writ so as to permit proceedings to be arrested unless they are without or in excess of the jurisdiction yet, manifestly, the words quoted have expanded the office of the writ so as to include acts other than those judicial. The section does not,

however, add to the jurisdiction of this court, whatever effect it may be deemed to have upon proceedings cognizable in the district courts. The constitution clothes this court with power to issue, and to hear and determine, writs of prohibition in proceedings wherein the writs lay at the time the constitution was adopted, and the act of the legislative assembly passed subsequently thereto could not confer upon the supreme court jurisdiction of proceedings in prohibition instituted to arrest the exercise of functions by a mere ministerial officer. Camron v. Kenfield, 57 Cal. 550; People [ex rel. Taylor] v. Board of Election Com'rs, 54 Cal. 404; Spring Valley Water Works v. Bartlett, 63 Cal. 245. There may have been instances, as in Pigott v. [Board of] Canvassers, 12 Mont. 537, 31 Pac. 536, and Donovan v. [State Capitol] Commission, 21 Mont. 344, 53 Pac. 1133, in which the attention of this court was not called to the principles here announced." See State ex rel. Boston &. M. Consol. Copper & Silver Mining Co. v. Second Judicial District Court, 22 Mont. 220, 56 Pac. 219; State ex rel. Hauswirth v. Beadle, 90 Mont. 24, 300 Pac. 197.

Extreme necessity should usually be apparent before this ▇▇ extraordinary remedy will be granted. See State ex rel. Boston & M. Consol. Copper & Silver Mining Co. v. Second Judicial District Court, supra.

The term "jurisdiction" as used in the statutes, is the power ▇▇ to hear and determine the particular case. See State ex rel. Mueller v. District Court, 87 Mont. 108, 285 Pac. 298; Missoula Belt Line Ry. v. Smith, 58 Mont. 432, 193 Pac. 529; Crawford v. Pierse, 56 Mont. 371, 185 Pac. 315; State v. District Court, 35 Mont. 321, 89 Pac. 63; State ex rel. King v. Second Judicial District Court, 24 Mont. 494, 62 Pac. 820; State ex rel. Whiteside v. First Judicial District Court, 24 Mont. 539, 63 Pac. 395.

There can be no doubt but that the county superintendent is ▇▇ within her jurisdiction in hearing relator's appeal.

R. C. M. 1947, sec. 75-2401, as amended by Chapter 166, Laws of 1949, known as the teachers' tenure law, provides in part: "After the election of any teacher or principal for the

third consecutive year in any school district in the state, such teacher or principal so elected shall be deemed re-elected from year to year thereafter at the same salary unless the board of trustees shall by majority vote of its members on or before the first day of April give notice in writing to said teacher or principal that he has been re-elected or that his services will not be required for the ensuing year, but in this written notice, the board of trustees, if requested by the teacher or principal, must declare clearly and explicitly the specific reason or reasons for the failure of re-employment of such teacher. The teacher or principal, if he so desires, shall be granted a hearing and reconsideration of such *dismissal,* before the board of trustees of that school district. The request for a hearing and reconsideration must be made in writing and submitted to the board of school trustees within ten (10) days after receipt of notice of *dismissal.* The board of trustees must hold a hearing and reconsider its action within ten (10) days after receipt of such request for a hearing and reconsideration. * * *''

The right of a school teacher to teach in a school, or school █ █ district, from year to year, after having taught in such school or school district for three consecutive years, is called tenure. A teacher's tenure is a substantial, valuable and beneficial right, which cannot be taken away except for good cause.

In Smith v. School District No. 18, 115 Mont. 102, 139 Pac. (2d) 518, 523, this court said: ''The purpose of enacting the Teacher Tenure Act (sec. 1075 [R. C. M. 1935, now R. C. M. 1947, sec. 75-2401, as amended]) is not merely to insure teaching employment but it is also to insure to teachers who have held teaching positions for three or more consecutive years, security in the position, the grade or the status which they have thus attained. * * *

''The new position offered appellant was a demotion. * * * To thus demote a teacher requires the same procedure as removal or dismissal. State ex rel. Bass v. Vernon Parish School Board, supra [La. App., 194 So. 74, 76].

''While a regularly employed teacher may be discharged for

a good and sufficient cause yet 'the board has no power to * * * transfer a teacher from a higher to a lower grade. Assigning a teacher to a lower grade is a "removal," and just as much so as a dismissal would be.' Voorhies, The Law of Public Schools, Chap. V, sec. 69, at page 160."

In Day v. School District No. 21, 98 Mont. 207, 38 Pac. (2d) 595, 597, this court said: "When she [the teacher] showed that she had been elected by the board, that she had taught three consecutive years immediately preceding the year 1932, and that she possessed the other requisite qualifications prescribed by law, she brought herself within the meaning of the statute [R. C. M. 1921, sec. 1075, now R. C. M. 1947, sec. 75-2401] and was entitled to the privileges and benefits thereof, including a legal and timely notice. * * *

"Having found that plaintiff was entitled to a notice of dismissal before May 1, 1932, and that no legal notice was ever given by defendants, it follows that the judgment of the district court is correct."

In taking the right of tenure from a teacher the law provides that certain steps shall be taken:

(1) The school board shall, on or before the 1st day of April, give notice in writing to the teacher that his (or her) services will not be required for the ensuing year;

(2) The school board, if requested by the teacher, shall declare clearly and explicitly the specific reason or reasons for the failure to re-employ such teacher;

(3) The school board, if requested by the teacher, shall grant a hearing and reconsideration *"of such dismissal"* to such teacher;

(4) The school board must hold such hearing and reconsider its action within ten days after receipt of such request. See R. C. M. 1947, sec. 75-2401.

It is clear that the legislature intended that the notice from ▋ the school board of and the failure to re-employ the teacher for the ensuing year constituted a "dismissal" and used such name to designate such action in section 75-2401, supra.

As far back as 1932 this court, in Day v. School District No. 21, supra, in speaking of the statute (then R. C. M. 1921, sec. 1075, now R. C. M. 1947, sec. 75-2401), considered such action on the part of a school board a "dismissal" and said: "Having found that plaintiff was entitled to a notice of dismissal before May 1, 1932 [now the notice of April 1st] and, that no legal notice was ever given by defendants, it follows that the judgment of the district court is correct." See Smith v. School District No. 18, supra.

Merriam-Webster's New International Dictionary 2d ed., defines: "Dismissal, act of dismissing or state or fact of being dismissed;" and "Dismiss, to send or remove from office, service, or employment; discharge."

In deciding relator's rights herein, tenure laws must be liberally construed in order to effect the purposes of such laws.

In McSherry v. City of St. Paul, 202 Minn. 102, 277 N. W. 541, 546, 127 A. L. R., note p. 1302, it was said: "The reasoning used by the court in State ex rel. Clark v. Stout, 206 Ind. 58, 64, 65, 187 N. E. 267, 269, is applicable here: 'But in our opinion the Teacher Tenure Act is based upon the public policy of protecting the educational interests of the state and not upon a policy of granting special privileges to teachers as a class or as individuals. Consequently it should not be strictly construed as against relator, but rather should be construed liberally to effect the general purpose of the Tenure Act, since it is "legislation in which the public at large is interested."' "

Relator was a "teacher" in school district No. 1 of Fergus County, and her contract was no different from that given a full time teacher, even though according to the record, by virtue of oral agreement with the school board, she only taught in the morning, nothing being said in the written contract as to the number of hours of teaching required each day.

Such contract, a "Lewistown City School Teacher's Contract," was signed by relator and the school board on April 29, 1953, wherein relator, "a regularly and duly licensed teacher

under the laws of the State of Montana," was hired "to teach in the schools of District No. One of Fergus County, Montana, for and during the school year beginning August 24, 1953, and ending August 24, 1954. * * * the parties to this contract shall in no wise be bound by any verbal promises or agreements and that this contract shall constitute the only agreement between the parties."

Under the statute, R. C. M. 1947, sec. 75-2401, supra, relator, ▇▇▇▇ although teaching only in the mornings, had tenure, such section providing that: "After the election of *any teacher* * * * for the third consecutive year in any school district in the state, *such teacher* * * * so elected shall be deemed re-elected from year to year thereafter * * *." It appears, therefore, that the number of hours a teacher may teach in a day is not a factor in determining her right to tenure.

The school board recognized that relator had tenure by giving her the written notice of their action in not rehiring her, rehearing and reconsideration thereof, as provided by the law and to which teachers with tenure were entitled. Relator's teaching was on regular, consecutive school days and did not differ from those of a full time or regular teacher, except in the number of hours taught each day.

In McSherry v. City of St. Paul, 202 Minn. 102, 277 N. W. 541, 127 A. L. R., note p. 1302, the Minnesota Supreme Court said: "In the school years 1933-1934 and 1934-1935, she [plaintiff] lost more of her teaching time, but her employment was substantial and reasonably continuous, considering that she was classified as a 'casual substitute' * * * [which] are, as that label indicates, substitutes subject to call for service at any time and for any school in the city. They usually work short periods, a few days to several weeks * * *.

"The record leaves no doubt that plaintiff was in fact a 'teacher' within the meaning of the act, and was so engaged and so recognized by defendant. The question then simmers down to whether she was employed by defendant a sufficient

length of time to bring her within the tenure provided by the act. * * *

"Plaintiff's *employment* was as *regular* as that of any of the *regular* teachers, but *rendering the service,* as to time and place, was not. * * * that defendant made use of her services with substantial continuity cannot be denied. * * *

"She was * * * an employee at all times here involved, and her employment was that of a teacher, nothing else. To say that a day's layoff, or even several, would break her service insofar as continuity is concerned is to nullify the very existence of any probationary period. Defendant recognized her statutory rights, but sought to nullify them by a discharge which under the act was wholly insufficient. The actual situation refutes defendant's claims; and to adopt its interpretation of the statute would in effect, upon the facts here appearing, do away with it entirely."

In Sherrod v. Lawrenceburg School City, 213 Ind. 392, 12 N. E. (2d) 944, 127 A. L. R., note 1302, the Supreme Court of Indiana said: "It is contended by the appellees that the appellant is not a tenure teacher, and that her employment and her salary are not protected by the Teachers' Tenure Law, for the reason that she was what is termed a 'part-time teacher', that is, that she did not teach classes every school day, but only twelve school days in each month [20 days constituting a regular school month]. There can be no merit in this contention. She was not an occasional teacher who taught intermittently as a substitute or otherwise. She was a regular teacher. The law does not require that teachers shall teach every day, or every hour of every day. Such subjects as art or music may require fewer hours of teaching. This is in the discretion of the school authorities. But appellant was undoubtedly regularly employed, teaching the same subject a given number of days per month, over a period of years, and must be considered a regular teacher."

Relator's dismissal, as evidenced by the school board's letter of April 27, 1954, was based not on her lack of ability to teach mathematics, but for other reasons which tended to show her

unfitness to teach. Such dismissal was made at a time when relator had an unexpired written teacher's contract with such school board, which contract ran from August 24, 1953, to June 8, 1954.

Hence, relator's next step to be taken was to review the action of the board by an appeal to the county superintendent of schools, which she was doing when the district court stepped in and halted the county superintendent from hearing such appeal.

R. C. M. 1947, sec. 75-2411, provides: "In the case of the *dismissal* of any teacher before the expiration of any written contract entered into between such teacher and board of trustees *for alleged* immorality, *unfitness,* incompetence, or violation of rules, the teacher may appeal to the county superintendent; and if the superintendent decides that the removal was made *without* *good cause,* the teacher so removed must be reinstated, and shall be entitled to compensation for the time lost during the pending of the appeal."

As said in Kelsey v. School District No. 25, 84 Mont. 453, 276 Pac. 26, this section (R. C. M. 1921, sec. 1085, now R. C. M. 1947, sec. 75-2411) "became a condition of the contract as effectively as if expressly written therein. Home State Bank v. Swartz, 72 Mont. 425, 234 Pac. 281; State [for Use and Benefit of Broadwater County] v. Rosman, 84 Mont. [207], 274 Pac. 850."

It is the duty of the county superintendent to hear such appeal, and the decision of such county superintendent therein may be appealed to the superintendent of public instruction.

R. C. M. 1947, sec. 75-1518, provides: "He [the county superintendent of schools] shall decide all matters in controversy arising in his county in the administration of the school law or appealed to him from the decision of school officers or boards. An appeal may be taken from his decision, in which case a full written statement of the facts, together with the testimony and his decision in the case, shall be certified to the state superintendent for his decision in the matter, which decision shall be

final, subject to adjudication or the proper legal remedies in the state courts."

As said in Kelsey v. School District No. 25, supra: "From the action of the board in discharging the plaintiff she had a plain, speedy, and adequate remedy—by appeal first to the county superintendent, and, having been unsuccessful in that, to the superintendent of public instruction. Peterson v. School Board [of School Dist. No. 1], 73 Mont. 442, 236 Pac. 670; Kinzer v. Directors of Independent School Dist. of Marion, 129 Iowa 441, 105 N. W. 686, 3 L. R. A., N. S., 496, 6 Ann. Cas. 996. It is unquestionably the policy of this state, as declared by the Legislative Assembly, that ordinary school controversies shall be adjusted by those who are specially intrusted with that duty. It is not the policy to encourage resort to the courts in such matters. So long as the school officers act legally and within the power expressly conferred upon them the courts will not interfere. State ex rel. School District [No. 86] v. Trumper, 69 Mont. 468, 222 Pac. 1064.

"'* * * the plaintiff had a plain, speedy, and adequate remedy by appeal to the school officers, in whom the law reposes, by reason of their special fitness to decide, the duty of settling the controversy, which remedy the plaintiff did not exhaust * * *.'" See Eastman v. School District No. 1, 120 Mont. 63, 180 Pac. (2d) 472.

By Chapter 166, Laws of 1949, the legislature added, as an amendment to R. C. M. 1947, sec. 75-2401, as it existed on April 18, 1947, when the case of Eastman v. School District No. 1, supra, was decided the following words: "but in this written notice [that her services will not be required for the ensuing year], the board of trustees, if requested by the teacher or principal, must declare clearly and explicitly the specific reason or reasons for the failure of re-employment of such teacher. The teacher or principal, if he so desires, shall be granted a hearing and reconsideration *of such dismissal*, before the board of trustees of that school district. The request for a hearing and reconsideration must be made in writing and submitted to the

board of school trustees within ten (10) days after receipt *of notice of dismissal.* The board of trustees must hold a hearing and reconsider its action within ten (10) days after receipt of such request for a hearing and reconsideration.''

Anything said in Eastman v. School District No. 1, supra, which is in conflict with or contrary to what is said here is herewith expressly overruled.

For the reasons stated the writ of prohibition improperly issued from the respondent court and judge, and the same is ordered set aside and dismissed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES BOTTOMLY and ANDERSON, concur.

MR. JUSTICE ANGSTMAN: (specially concurring).

I concur in the conclusion reached in the foregoing opinion but not with all that is said in it. The narrow question determinative of the case is whether the district court was right in arresting the hearing before the county superintendent of schools.

The answer to the question is found in R. C. M. 1947, sec. 75-2411, which in clear and simple language provides for an appeal to the county superintendent for dismissal of a teacher for alleged ''immorality, unfitness, incompetence, or violation of rules''.

This court has repeatedly held that a teacher discharged for cause must exhaust the administrative remedies provided for by R. C. M. 1947, secs. 75-2411 and 75-1518, before resorting to the courts. Kelsey v. School District No. 25, 84 Mont. 453, 276 Pac. 26; State ex rel. School District No. 86 v. Trumper, 69 Mont. 468, 222 Pac. 1064. This rule was pointed out by me in my specially concurring opinion in the case of Eastman v. School District No. 1, 120 Mont. 63, 180 Pac. (2d) 472. This is the only point in the Eastman case that has anything to do with the instant case.

This case is ruled by a statute passed since the decision in the Eastman case providing for tenure of teachers and prohibiting

their discharge without giving written notice, if requested by the teacher, as to the reasons for the failure to re-employ and providing for the opportunity of a hearing. Chapter 166, Laws of 1949.

In the opinion prepared herein by Mr. Justice Freebourn, it is said: "Anything said in Eastman v. School District No. 1, supra, which is in conflict with or contrary to what is said here is herewith expressly overruled." If there is anything in the majority opinion herein at variance with what is said in the majority opinion in the Eastman case it is due to the change in statute made by Chapter 166, Laws of 1949. The pot shot at the Eastman case above quoted is wholly gratuitous. The desired change has already been made by the legislature.

I think the trial court was wrong in halting the hearing before the county superintendent and therefore concur in the result reached in the majority opinion.