No. 86-533

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

AARON STANSBERRY,

> Petitioner/Respondent and
> Cross-Appellant,

-vs-

ED ARGENBRIGHT, Superintendent of Public
Instruction and TRUSTEES OF ROOSEVELT
COUNTY HIGH SCHOOL DISTRICT #5A,

> Respondents/Appellants and
> Cross-Respondents.

---

APPEAL FROM:   The District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

> For Appellant:
>
> > Charles E. Erdmann; Erdmann & Wright, Helena,
> > Montana
>
> For Respondent:
>
> > Emilie Loring; Hilley & Loring, Great Falls, Montana

---

Submitted on Briefs:   Feb. 26, 1987

Decided:   May 26, 1987

Filed:   MAY 26 1987

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The District Court of the First Judicial District, Lewis and Clark County, reversed the actions of the Roosevelt County Board of School Trustees (School Trustees), the County Superintendent of Schools (County Superintendent), and the State Superintendent of Public Instruction (State Superintendent), and directed that Mr. Stansberry be offered a contract as a tenured teacher. School Trustees appealed and Mr. Stansberry cross-appealed. We reverse.

The issues are:

1. Did the District Court err in reversing the decisions of the School Trustees, the County Superintendent, and the State Superintendent and directing that Mr. Stansberry be offered a contract?

2. Did the District Court err by not directing the School Trustees to pay Mr. Stansberry back pay and retroactive fringe benefits?

Mr. Stansberry was a tenured teacher who taught in the Wolf Point High School District for seven years prior to this controversy. In 1981 Mr. Stansberry requested sabbatical leave for the 1982-83 school year pursuant to the Professional Policies Agreement between the School District and the Wolf Point Education Association. The agreement provides in pertinent part:

> 5575.8 Sabbatical Leave
>     a. Sabbatical leave shall be available to a teacher after seven (7) years of service. A teacher receiving sabbatical leave shall be awarded 50% of their annual base salary they would have received had he or she remained at his or her teaching position. Such salary will be paid upon completion of the

granted sabbatical leave and upon beginning to teach in the system in the school year following his/her absence.

b. Leave may be granted by the Board of Trustees upon application approval by a joint review panel representing the WPEA and the school system to engage in full-time study, travel, research, work experience or other professionally advantageous activity. . . .

c. Teachers on sabbatical leave receive normal salary increments, tenure rights, and fringe benefits while on leave and must return to their former position or similar position.

In part Mr. Stansberry's application letter stated:

I would like to make formal application for a Sabbatical Leave during the 1982-83 school year.

If this application is accepted, I intend to pursue either an MA or MFA degree in English, concentrating in Creative Writing.

In a December 1981 School Board meeting, Mr. Stansberry's application was approved. The School Board minutes provided:

The Board next took under consideration the written request from Mr. Aaron Stansberry for Sabbatical Leave during the 1982-83 school year. He stated that his intent is to persue [sic] either a MA or MFA in English, concentrating in Creative Writing. A letter accompanied this request which was signed by Mrs. Penny Nelson, Mr. William Gilman, High School Principal, and Mr. Michael Thompson, High School English Instructor recommending that Mr. Stansberry's Sabbatical Leave request be approved. A motion was made by Listerud and seconded by Hansen that the Board approve granting a request that Mr. Stansberry have Sabbatical Leave during the 1982-83 school year. A vote was taken and the motion carried.

In April 1982, Mr. Stansberry was informed by the University of Montana English Department that he had not been accepted to the graduate program. The above facts are all undisputed. The parties dispute what occurred at a May 18, 1982, meeting between Mr. Stansberry and District Superintendent Robert Kinna.

Mr. Stansberry testified that he met with Mr. Kinna, informed him that his application for graduate school had been denied, and asked him what he should do. Mr. Stansberry further testified that Mr. Kinna responded by saying that it was fine to "continue with my sabbatical leave" and that "the purpose of the sabbatical leave was for a teacher to recharge his or her batteries." Mr. Kinna testified that he did not make the above statements and that he was not informed by Mr. Stansberry that he had not been accepted to the graduate program. Mr. Kinna stated they had talked about sabbatical leave fringe benefits and salary.

In August 1982, Mr. Stansberry wrote Mr. Kinna and stated: ". . . I didn't attend the university this summer; therefore, I won't be advancing an additional step on the pay scale." The purpose of this letter was to confirm the School District's records on Mr. Stansberry's current level of teacher education. The letter would not have placed the School District on notice that Mr. Stansberry would not be attending graduate school because the letter was only to inform the District which salary level to use in computing Mr. Stansberry's salary during his sabbatical year. Had Mr. Stansberry completed the summer school course he would have been entitled to a small pay increase.

In February 1983, Mr. Kinna wrote Mr. Stansberry and requested documentation that he had pursued the intent of his sabbatical leave. On March 11, 1983, Mr. Stansberry wrote to Mr. Kinna and stated:

4

> I have instructed the Registrar at the University of Montana to send you a transcript of my work last quarter. Originally I moved to Helena to attend several classes at Carroll College, but my pocketbook couldn't afford $98 per credit, so I have been working at a variety of jobs. However, I do plan to take several more classes before returning to Wolf Point. As I remember a person on a sabbatical leave can do three things: 1) return to school; 2) travel; and 3) work at a job related to his teaching field.
>
> Well, I have returned to school. Also I've traveled: Mexico, Texas, Colorado, Utah and Western Montana. Currently I'm working as a tutor in English, Social Studies and Math. I also work at outside sales and public relations.
>
> I hope this outline of my leave is satisfactory.

The previous quarters' work Mr. Stansberry referred to was a six-credit, graduate non-degree course which could not be applied to his MA or MFA. The School Trustees, the County Superintendent, and the State Superintendent all maintain that this was the first indication they had that Mr. Stansberry had not attended graduate school during his leave. In a letter dated March 15, 1983, Mr. Kinna informed Mr. Stansberry that:

> At a regular March 14, 1983, School Board meeting, the Trustees voted unanimously to terminate your teaching services for the 1983-84 school year.
>
> After reviewing the reason for granting your sabbatical leave and comparing it to your letter of March 11, 1983, no other decision could be reached.

In a follow up letter regarding the reasons for the termination of his teaching services, Mr. Kinna stated that "[t]he stated reason for the sabbatical leave was in no way honored by Mr. Stansberry."

5

Mr. Stansberry appealed the School Trustees' decision to the County Superintendent of Schools, who affirmed the School Board. He then appealed to the State Superintendent of Public Instruction, who also affirmed the School Trustees. He then appealed the matter to the District Court which first remanded for additional fact gathering and then reversed the School Trustees, the County Superintendent, and the State Superintendent, and directed them to offer Mr. Stansberry a contract as a tenured teacher. The School Trustees appealed that decision to this Court. Mr. Stansberry cross-appealed requesting back pay and fringe benefits which the District Court did not award him.

I

Did the District Court err in reversing the decisions of the School Trustees, the County Superintendent, and the State Superintendent and directing that Mr. Stansberry be offered a contract?

A recent Montana case provides us with precedent which gives us guidance on this issue. In Yanzick v. School District No. 23, Lake County Montana (1982), 196 Mont. 375, 641 P.2d 431, a tenured school teacher's contract was not renewed because he had allegedly demonstrated a lack of fitness by: (1) cohabitating with a female teacher; (2) using human fetuses in the classroom when discussing abortion; and (3) making statements to his classroom regarding his living arrangements with the teacher and the subject of abortion. The opinion pointed out that the record must show good cause for the termination of a teacher's tenure and that in addition the conduct of the teacher, including a characterization that it is immoral, must be such as to directly affect the performance by the teacher of his duties as a teacher.

The Yanzick court's reversal of the District Court upheld the nonrenewal of the teacher's contract. The Court

6

held that the District Court and the Supreme Court may reverse the previous decision only if substantial rights of the teacher were prejudiced because the administrative findings and conclusions were:

> . . . clearly erroneous in view of the reliable, probative and substantive evidence on the whole record.

Yanzick, 644 P.2d at 439 (citing §§ 2-4-704 and 711, MCA.)

In comparing the powers of the school district to terminate a teacher and the rights of a tenured teacher, the Yanzick court stated:

> While it is true that the trustees of a school district do have the power and duty to both employ a teacher and terminate a teacher under the appropriate circumstances, the rights of the teachers must also be kept constantly in mind. The tenure of a teacher is clearly both a valuable and a substantial right which cannot be taken away except for good cause. (Emphasis added.)

Yanzick, 644 P.2d at 440. Therefore, the question before the County Superintendent, the State Superintendent, and the District Court was whether the school trustees had "good cause" not to renew Mr. Stansberry's contract keeping in mind that Mr. Stansberry's tenure was a substantial and valuable right which could only be taken away for good cause.

The District Court found that "the administrative findings and conclusions of both the County Superintendent and of the State Superintendent 'were clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.'" Thus, there are two questions that this Court must answer in addressing this issue. First, did the District Court err in finding that the County Superintendent's findings were clearly erroneous in view of the reliable, probative, and substantial evidence on the whole

7

record? Second, did the District Court err in reversing the decisions of the County Superintendent and the State Superintendent based on an error of law?

It is well established that the District Court may not substitute its judgment for that of the County Superintendent as to the weight of the evidence on questions of fact. _Yanzick_, 644 P.2d at 438. In this case the District Court remanded to the County Superintendent for additional findings of fact on two questions -- whether the May 18, 1982, meeting between Mr. Stansberry and Mr. Kinna put the School District on notice that Mr. Stansberry had not been accepted to graduate school and whether the August 18, 1982, letter placed the School District on notice that Mr. Stansberry was not planning to attend graduate school. After remand to the County Superintendent, both of these issues were specifically found in favor of the School District. These determinations were then apparently reversed by the District Court.

The primary factual controversy in this case concerns what was said during the May 18th meeting between Mr. Stansberry and Mr. Kinna. The County Superintendent found that Mr. Stansberry had failed to inform Mr. Kinna at the May 18th meeting that he had not been accepted to graduate school. In making that determination, the County Superintendent had the opportunity to listen to and observe the demeanor, conduct, and testimony of the witnesses. Testimony was given on both sides of the controversy and the County Superintendent found for the School District. We conclude that the District Court erred in substituting its judgment for that of the County Superintendent. As was stated in another administrative case:

> If there is substantial credible evidence on the record, the findings are not "clearly erroneous." .
> . . If the record contains support for the factual

8

> determinations made by the agency, the courts may
> not weigh the evidence. They are bound by the
> findings of the agency.

City of Billings v. Billings Firefighters (1982), 200 Mont. 421, 431, 651 P.2d 627, 632.

Substantial credible evidence supports the factual determinations made by the County Superintendent. Therefore, the District Court was bound by the County Superintendent's findings. We conclude that the findings of the County Superintendent and State Superintendent were not clearly erroneous in view of the reliable, probative and substantial evidence and therefore reverse the District Court in its conclusion that such administrative findings were clearly erroneous.

The County Superintendent found that the August 18, 1982, letter from Mr. Stansberry to Mr. Kinna did not place the School District on notice that Mr. Stansberry was not planning to attend graduate school. The District Court did not specifically reverse this holding, but indicated the letter may have been notice to the School District that Mr. Stansberry was not planning on attending graduate school. Once again, we affirm the County Superintendent's decision that the letter was not such notice. Substantial credible evidence in the record supports that determination.

The second question is whether the District Court erred in reversing the decisions of the County Superintendent and the State Superintendent based on an error of law. Section 2-4-704(2), MCA, provides in pertinent part:

> The Court may reverse or modify the decision if
> substantial rights of the appellant have been
> prejudiced because the administrative findings,
> inferences, conclusions, or decisions are:
>
> . . .
>
> (d) affected by other error of law.

The District Court concluded that the County and State Superintendents erroneously referred to § 20-4-207, MCA, instead of the proper statute, § 20-4-204, MCA, and that Mr. Stansberry's conduct did not constitute "good cause" for termination of his job. The District Court was correct in concluding that the County and State Superintendents erroneously referred to § 20-4-207, MCA. Section 20-4-207, MCA, only applies to the dismissal of a teacher before the expiration of his or her contract. That statute is inapplicable to Mr. Stansberry's case because his contract was simply not renewed, as opposed to a dismissal during the contract term. Yanzick held:

> We hold that section 20-4-207, MCA, which sets forth the grounds upon whch the trustees may dismiss a teacher before the expiration of his employment contracat is not applicable to the termination of the services of a tenure teacher under the provisions of Section 20-4-203 and 20-4-204, MCA.

Yanzick, 641 P.2d at 441.

In his first order, the County Superintendent concluded:

> 5. Petitioner was properly given reasons for his termination and was granted a hearing pursuant to section 20-4-204, MCA.
> 6. Good cause existed for the termination of Petitioner and the Wolf Point Board of Trustees acted properly within their discretion.

### ORDER

> On the basis of the foregoing Findings of Fact and Conclusion of Law the Hearing Officer finds that good cause existed for the termination of Petitioner.

The State Superintendent's first order stated that "[t]here was good and just cause for his termination." Up to this point, the County and State Superintendents correctly applied

10

the law. However, the State and County Superintendents then confused the issue and erred by referring to § 20-4-207, MCA, the violation of "adopted policies", and Mr. Stansberry's purported dismissal before the expiration of his employment contract. For instance, the State Superintendent stated in his second order:

. . .

14. That Petitioner did violate Wolf Point School Board's policy on sabbatical leave when he did not pursue his sabbatical as outlined in his letter of October 18, 1981 and when he did not notify the school board of his change in plans and goals for his sabbatical leave.
15. That Petitioner was properly dismissed before expiration of his employment contract for violation of the adopted policies of the school board.

. . .

18. There is sufficient evidence in the record to support a finding that there was a violation of adopted board policy and that such violation is cause for dismissal under contract pursuant to Section 20-4-207, MCA, and within the prerogatives of the Board of Trustees of Roosevelt County High School District No. 45A.

Although these references were made in error, we conclude this does not constitute reversible error. Mr. Stansberry's substantial rights were not prejudiced as a result of the erroneous references. Mr. Stansberry was put on notice of the reasons for nonrenewal from the day he was informed his contract was not being renewed. The procedure followed by both the Board of Trustees and the County Superintendent followed the provision of § 20-4-204, MCA. In addition, in the original orders, both the County Superintendent and the State Superintendent correctly referred to § 20-4-204, MCA, and the good cause standard. We conclude

11

that the erroneous reference to § 20-4-207, MCA, in the subsequent orders did not prejudice Mr. Stansberry and does not constitute reversible error.

We will next turn to the "good cause" standard and its application to Mr. Stansberry's contract nonrenewal. In Yanzick, the good cause standard was premised on whether the teacher's conduct directly affected his duties as a teacher. Yanzick, 641 P.2d at 441. No contention is made in the present case that the conduct of Mr. Stansberry directly affected his duties as a teacher. The question is of course not related to his conduct in the classroom as was true in Yanzick. Nonetheless, based on Yanzick we conclude that good cause must be shown in order to terminate Mr. Stansberry's contract because he was a tenured teacher.

We conclude that the breach of an agreement between a teacher and the School Trustees may constitute good cause for nonrenewal of the teacher's contract. The statutes do not give any specific guidance on what constitutes good cause under these circumstances. Each case therefore must be considered on its own facts to determine whether or not good cause has been established.

We conclude that the findings of fact establish an agreement between Mr. Stansberry and the School Trustees under which Mr. Stansberry would study toward an MA or MFA and improve his teaching qualifications in return for the sabbatical leave. Under the Professional Policies Agreement Mr. Stansberry was to be awarded 50 percent of his annual base salary which was to be paid upon completion of the granted sabbatical leave and upon beginning to teach in the system in the school year following his absence. The findings of fact establish there was no modification of that agreement.

12

The Professional Policies Agreement establishes that a sabbatical leave may be granted by the School Trustees upon application approval by the Teachers' Association and the school system to "engage in full time study, travel, research, work experience or other professionally advantageous activity." Here Mr. Stansberry was found to have applied by a letter in which he stated that if accepted he intended to pursue either an MA or an MFA in English, concentrating in creative writing. The correct application procedure was followed in this case.

Clearly an agreement under which Mr. Stansberry, an English teacher, would gain credits towards an MA or an MFA would be a professionally advantageous activity so far as the School Trustees are concerned. Clearly a significant or substantial benefit would result from compliance with the agreement. The failure of Mr. Stansberry to comply with that agreement therefore eliminated a substantial benefit to the School Trustees. Based upon the wording of the Professional Policies Agreement, we may properly conclude the benefit to the School Trustees was the primary reason for the approval of the sabbatical leave. In doing so, we note that this is the first teacher in the Wolf Point system to have been granted such a sabbatical leave. The breach of the agreement by Mr. Stansberry deprived the school district of an essential part of the bargain which it had made in the agreement. We conclude that the breach of an agreement which resulted in such a deprivation of benefit to the school district constituted good cause for nonrenewal of his contract.

We agree with the findings of fact and conclusions of law made by the County Superintendent in his original order:

13

## FINDINGS OF FACT

. . .

3. Petitioner applied for Sabbatical Leave on October 18, 1981 to "pursue either a MA or MFA degree in English, concentrating in Creative Writing". Source: Joint Exhibit 1.

4. The school board voted to grant Petitioner's leave based on the representation that he would pursue a graduate degree. Source: Bartel testimony; Respondent's Exhibit 3.

. . .

## CONCLUSIONS OF LAW

. . .

2. Petitioner violated his agreement with the School Board when he failed to pursue the full course of study that was the basis for his leave.

3. Petitioner violated Wolf Point School Board Policy when he failed to pursue the full course of study that was the basis for his leave.

4. By failing to attend graduate school and pursue either a MA or MFA in English Petitioner violated his professional responsibilities as a teacher.

5. Petitioner was properly given reasons for his termination and was granted a hearing pursuant to section 20-4-204, MCA.

6. Good cause existed for the termination of Petitioner and the Wolf Point Board of Trustees acted properly within their discretion.

Based upon these facts, we affirm the conclusion reached by the County Superintendent that good cause existed for refusal to renew Mr. Stansberry's contract. Accordingly, we reverse the District Court.

II

Did the District Court err by not directing the School Board to pay Mr. Stansberry back pay and retroactive fringe benefits?

14

We need not address this issue since we have reversed the District Court in effect reinstating the County Superintendent's decision that Mr. Stansberry should not be offered a contract as a tenured teacher.

We reverse the District Court, and affirm the decision of the State Superintendent that Mr. Stansberry's nonrenewal was based on good cause.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

15

86533

Mr. Justice John C. Sheehy, dissenting:


I dissent from the wrongful refusal to renew the teaching contract of this tenure teacher.

Under our statutes teachers are accorded a good many powers and responsibilities, and some substantial rights. Foremost among the rights, and perhaps the most cherished, is the right of tenure. First granted, as far as my research goes, in 1913 (Section 801, Chapter 76, Laws of 1913), for nearly 75 years it is a right that has been continuously reenacted, fiercely guarded by the teachers, and protected by this Court:

> A teacher's tenure is a substantial, valuable and beneficial right which cannot be taken away except for good cause. State ex rel. Saxtorph v. District Court (1954), 128 Mont. 352, 275 P.2d 209.

Though the original enactment provided tenure to a teacher upon the second annual teaching contract, § 20-4-203, MCA, its effect at the time that the matters related to this action took place was that whenever a teacher "has been elected by the offer and acceptance of a contract for the fourth consecutive year of employment by a district" the teacher became a "tenure teacher" (not "tenured teacher"; legislators and perhaps educators feel no compunction in using a noun for an adjective.)

Under the statutes prevailing and applicable here, § 20-4-204, MCA, provided that if the trustees of a school district resolved not to reelect a teacher for a coming teaching year, the district had to notify the teacher of the termination in writing before April 1 of the last contract year. The statute did not state reasons upon which such lack of reelection might be based. However this Court inserted the requirement of "good cause" in Saxtorph, supra and we

- 16 -

reaffirmed that position in Yanzick v. School District No. 23, Lake County, Montana (1982), 196 Mont. 375, 641 P.2d 431.

The majority have cited Yanzick at several points, but they have neglected a critical part of that decision in Yanzick, where we said:

> In view of our reversal of the District Court, it is necessary that we review the record in some detail. We have already indicated that the record must show good cause for the termination of the teacher's tenure. In addition, the conduct of the teacher, including a characterization that it is immoral, must be such as to directly affect the performance by the teacher of his duties of a teacher. (Emphasis supplied.)

196 Mont. 392; 641 P.2d 441.

Nothing in the record before us, the same record that was before the County Superintendent, the State Superintendent, and the District Court, indicates that the ability of Stansberry to teach was affected in the slightest degree by the brouhaha arising out of the sabbatical leave. District Judge Henry Loble determined that we had set out in Yanzick a true test for the non-reelection of a tenure teacher for cause, and ruled accordingly.

More than that, District Judge Loble made a fact finding in this case which is clearly correct, and as such is binding on us. (Rule 52(a), M.R.Civ.P.) The District Court sat in review of proceedings before the County Superintendent and then the State Superintendent of Education. As such he was bound by the standards of review in § 2-4-704. He obviously determined that he should reverse the decision of the State Superintendent and of the County Superintendent because their administrative findings and conclusions were clearly erroneous in view of the reliable, probative substantial evidence on the whole record, and arbitrary and capricious.

- 17 -

The District Court determined that the County Superintendent and the State Superintendent had proceeded in terminating Stansberry as a tenure teacher under the wrong statute. They had utilized the provisions of § 20-4-207, MCA, which applies only to the termination of a tenure teacher during the contract year, and not the statute applying to the reelection of a teacher for the coming year. Incorrectly relying on 20-4-207, the administrators had determined that Stansberry's contract should not be renewed for "violation of the adopted policies" of the school district. There was no such adopted policy.

Another factual dispute involved whether Stansberry had informed Superintendent Kinna on May 18, 1982 that his application for graduate study at the University of Montana had been rejected. Stansberry wanted to know from Kinna if he was to "stick around for the following year or just what I should do." Stansberry said that Kinna's response was "fine, to continue with his sabbatical leave and that the purpose of a sabbatical leave was for a teacher to recharge his or her batteries." In examining the record, the District Court found that the Superintendent was uncertain as to what was said at the May 18 meeting, that the Superintendent could not recall making the statements attributed to him by the petitioner and that Kinna did not deny that he had made the statements, although if he had he probably would recall it.

The District Court felt that this point was important to be resolved by a more specific finding and remanded the cause to the County Superintendent for a further determination as to what was actually said at the meeting of May 18. The County Superintendent convened another hearing on this point and then, two years later, Superintendent Kinna's memory became crystal clear. He denied the statements.

On August 18, 1982, Stansberry wrote Superintendent Kinna to give him his current address in Missoula and to advise him "I didn't attend the University this summer; therefore I won't be advancing an additional step on the pay scale." Stansberry also said, "It has been a good summer. Besides attending my 20th year high school reunion, I recently returned from a trip to Mexico."

Kinna and the school district and now this Court determined that this letter did not sufficiently advise them that Stansberry was not pursuing a Master's or other degree on his sabbatical. It is difficult to see what other conclusions could be drawn from the letter.

The findings of the District Court should be agreed to by this Court. On the whole record, the District Court was correct:

> Stansberry, apparently believing he had the permission of Superintendent Kinna after he had been advised that he wasn't accepted to graduate school, went ahead with his sabbatical leave and did accomplish some of the requirements of sabbatical leave as set forth in the Professional Policies Agreement of the Board and the Union which represents the teachers. He engaged in study as a student at the University of Montana; he read some worthwhile books; he traveled; he worked; he took a six-credit course at the University of Montana; and he engaged in other professionally advantageous activity, such as being a tutor to junior high school students. The conduct for which he was terminated did not rise to the seriousness of "good cause" which must be shown before he could be refused employment as a tenured teacher. It should be kept in mind that he has not only lost his job, but that his professional career is placed in serious jeopardy.

In determining that the County Superintendent and the State Superintendent were clearly erroneous in view of the whole record, the District Court found:

- 19 -

. . . The County Superintendent and the State Superintendent proceeded under the wrong statute after remand. Both before and after remand they made a finding concerning a violation of "adopted policies" which was properly considered only under a statute that has no relation to the present proceeding. The conduct of Petitioner Stansberry did not rise to the level of "good cause" for which the School Board might lawfully terminate his status as a tenured teacher. The School Board in this instance had never granted a sabbatical leave before. Except as might be stated in the Professional Policies Agreement, there was no "adopted policy" of the Trustees as concerns sabbatical leave.. . .

Thus we have in this case a situation where the County Superintendent and the State Superintendent found that Stansberry had breached the adopted policies of the board, policies which did not exist. The majority here have resorted to a different ground, a "breach of an agreement between the teacher and a school trustee" where no such agreement existed. The only agreement existing between this teacher and the school district is that formed by his union, agreed to by the District, which provides that in sabbatical leave, a teacher may return to school, travel, or work at a job relating to his teaching field.

The principle of tenure for teachers deserves a higher interpretation of good cause than is advanced here. I would affirm the District Court. Because of the majority opinion I do not discuss the cross-appeal of the teacher.

_John C. Sheehy_
Justice

I concur in the foregoing dissent:

_William E. Hunt_
Justice