MR. JUSTICE SHEEHY,
dissenting:
I dissent from the wrongful refusal to renew the teaching contract of this tenure teacher.
Under our statutes teachers are accorded a good many powers and responsibilities, and some substantial rights. Foremost among the rights, and perhaps the most cherished, is the right of tenure. First granted, as far as my research goes, in 1913 (Section 801, Chapter 76, Laws of 1913), for nearly 75 years it is a right that has been continuously reenacted, fiercely guarded by the teachers, and protected by this Court:
“A teacher’s tenure is a substantial, valuable and beneficial right which cannot be taken away except for good cause. State ex rel. Saxtorph v. District Court (1954), 128 Mont. 352, 275 P.2d 209.”
Though the original enactment provided tenure to a teacher upon the second annual teaching contract, Section 20-4-203, MCA, its effect at the time that the matters related to this action took place was that whenever a teacher “has been elected by the offer and acceptance of a contract for the fourth consecutive year of employment by a district” the teacher became a “tenure teacher” (not “tenured teacher”; legislators and perhaps educators feel no compunction in using a noun for an adjective.)
Under the statutes prevailing and applicable here, Section 20-4-204, MCA, provided that if the trustees of a school district resolved not to reelect a teacher for a coming teaching year, the district had to notify the teacher of the termination in writing before April 1 of the last contract year. The statute did not state reasons upon which such lack of reelection might be based. However this Court inserted the requirement of “good cause” in Saxtorph, supra and we reaffirmed that position in Yanzick v. School District No. 23, Lake County, Montana (1982), 196 Mont. 375, 641 P.2d 431.
The majority have cited Yanzick at several points, but they have neglected a critical part of that decision in Yanzick, where we said:
*135 “In view of our reversal of the District Court, it is necessary that we review the record in some detail. We have already indicated that the record must show good cause for the termination of the teacher’s tenure. In addition, the conduct of the teacher, including a characterization that it is immoral, must be such as to directly affect the performance by the teacher of his duties of a teacher. (Emphasis supplied.)”
196 Mont. 392; 641 P.2d 441.
Nothing in the record before us, the same record that was before the County Superintendent, the State Superintendent, and the District Court, indicates that the ability of Stansberry to teach was affected in the slightest degree by the brouhaha arising out of the sabbatical leave. District Judge Henry Loble determined that we had set out in Yanzick a true test for the non-reelection of a tenure teacher for cause, and ruled accordingly.
More than that, District Judge Loble made a fact finding in this case which is clearly correct, and as such is binding on us. (Rule 52(a), M.R.Civ.P.) The District Court sat in review of proceedings before the County Superintendent and then the State Superintendent of Education. As such he was bound by the standards of review in Section 2-4-704. He obviously determined that he should reverse the decision of the State Superintendent and of the County Superintendent because their administrative findings and conclusions were clearly erroneous in view of the reliable, probative substantial evidence on the whole record, and arbitrary and capricious.
The District Court determined that the County Superintendent and the State Superintendent had proceeded in terminating Stansberry as a tenure teacher under the wrong statute. They had utilized the provisions of Section 20-4-207, MCA, which applies only to the termination of a tenure teacher during the contract year, and not the statute applying to the reelection of a teacher for the coming year. Incorrectly relying on 20-4-207, the administrators had determined that Stansberry’s contract should not be renewed for “violation of the adopted policies” of the school district. There was no such adopted policy.
Another factual dispute involved whether Stansberry had informed Superintendent Kinna on May 18, 1982 that his application for graduate study at the University of Montana had been rejected. Stansberry wanted to know from Kinna if he was to “stick around, for the following year or just what I should do.” Stansberry said that Kinna’s response was “fine, to continue with his sabbatical leave and *136 that the purpose of a sabbatical leave was for a teacher to recharge his or her batteries.” In examining the record, the District Court found that the Superintendent was uncertain as to what was said at the May 18 meeting, that the Superintendent could not recall making the statements attributed to him by the petitioner and that Kinna did not deny that he had made the statements, although if he had he probably would recall it.
The District Court felt that this point was important to be resolved by a more specific finding and remanded the cause to the County Superintendent for a further determination as to what was actually said at the meeting of May 18. The County Superintendent convened another hearing on this point and then, two years later, Superintendent Kinna’s memory became crystal clear. He denied the statements.
On August 18, 1982, Stansberry wrote Superintendent Kinna to give him his current address in Missoula and to advise him “I didn’t attend the University this summer; therefore I won’t be advancing an additional step on the pay scale.” Stansberry also said, “It has been a good summer. Besides attending my 20th year high school reunion, I recently returned from a trip to Mexico.”
Kinna and the school district and now this Court determined that this letter did not sufficiently advise them that Stansberry was not pursuing a Master’s or other degree on his sabbatical. It is difficult to see what other conclusions could be drawn from the letter.
The findings of the District Court should be agreed to by this Court. On the whole record, the District Court was correct:
“Stansberry, apparently believing he had the permission of Superintendent Kinna after he had been advised that he wasn’t accepted to graduate school, went ahead with his sabbatical leave and did accomplish some of the requirements of sabbatical leave as set forth in the Professional Policies Agreement of the Board and the Union which represents the teachers. He engaged in study as a student at the University of Montana; he read some worthwhile books; he traveled; he worked; he took a six-credit course at the University of Montana; and he engaged in other professionally advantageous activity, such as being a tutor to junior high school students. The conduct for which he was terminated did not rise to the seriousness of “good cause” which must be shown before he could he refused employment as a tenured teacher. It should be kept in mind that he has not only lost his job, but that his professional career is placed in serious jeopardy.
*137 In determining that the County Superintendent and the State Superintendent were clearly erroneous in view of the whole record, the District Court found:
. . The County Superintendent and the State Superintendent proceeded under the wrong statute after remand. Both before and after remand they made a finding concerning a violation of “adopted policies” which was properly considered only under a statute that has no relation to the present proceeding. The conduct of Petitioner Stansberry did not rise to the level of “good cause” for which the School Board might lawfully terminate his status as a tenured teacher. The School Board in this instance had never granted a sabbatical leave before. Except as might be stated in the Professional Policies Agreement, there was no “adopted policy” of the Trustees as concerns sabbatical leave . . . .”
Thus we have in this case a situation where the County Superintendent and the State Superintendent found that Stansberry had breached the adopted policies of the board, policies which did not exist. The majority here have resorted to a different ground, a “breach of an agreement between the teacher and a school trustee” where no such agreement existed. The only agreement existing between this teacher and the school district is that formed by his union, agreed to by the District, which provides that in sabbatical leave, a teacher may return to school, travel, or work at a job relating to his teaching field.
The principle of tenure for teachers deserves a higher interpretation of good cause than is advanced here. I would affirm the District Court. Because of the majority opinion. I do not discuss the cross-appeal of the teacher.
MR. JUSTICE HUNT concurs in the foregoing dissent.